**In re RICH JOYCE ENTERPRISES, INC., t/a Long Island Contracting Co., Debtor.**

Bankruptcy No. 085–50745–21.

United States Bankruptcy Court, E.D. New York.

June 25, 1987.

Pinks, Brooks, Stern & Arbeit, Hauppauge, N.Y., by Steven G. Pinks, for debtor.

James J. Von Oiste, Port Jefferson, N.Y., for Tiffany Realty and Golden Triangle Realty.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court is an application by two real estate brokers, Tiffany Realty, Inc. ("Tiffany") and Golden Triangle Realty ("Golden Triangle") for retroactive approval of their employment by the debtor-in-possession, Rich Joyce Enterprises, Inc. ("Rich Joyce"), and for approval of the payment to them of $23,600.00. The two brokers were employed by the debtor sometime prior to the time Rich Joyce made a sale with their assistance on February 26, 1987. The debtor, Rich Joyce, does not oppose retroactive approval, but asks the Court to determine what is reasonable compensation for the brokers' services.

Rich Joyce, the debtor and debtor-in-possession, filed under Chapter 11 on November 19, 1985. Its petition showed its most significant asset to be certain real property located at 319 Sunrise Highway, West Islip, New York, to which the petition attributed a market value of $275,000. An appraiser retained by the Court placed the value of the property at $300,000.

After filing under Chapter 11, Rich Joyce, around July, 1986, retained either Tiffany Realty, or Golden Triangle, or both to sell a portion of this real estate. Through their joints efforts, a contract was entered into on September 23, 1986, between the debtor, as seller, and W.R. Land Developers, Inc., as purchaser of half the debtor's real estate. The contract of sale was signed at the office of Pinks, Brooks, Stern & Arbeit, the attorneys for Rich Joyce. Signed at the same time as the contract of sale was a commission agreement pursuant to which Rich Joyce understood to pay brokerage to Tiffany Realty in the amount of $11,800, and to Golden Triangle in the same amount. The agreement provided that the commission was payable to both parties if, and when, the title closed.

Although the brokers were aware that Rich Joyce was in Chapter 11, nothing was said to them at the time by the debtor, or its attorneys, with respect to the necessity of securing authorization from the bank-

ruptcy court for their employment. However, Mr. Pinks, the attorney for the debtor, says that sometime between the time the contract was signed and the closing date, he informed them of the need for court approval.

On January 22, 1987, Rich Joyce, by its attorneys, Pinks, Brooks, Stern & Arbeit, applied for approval to enter into the sale arranged by the two brokers. The application described the sale as one to sell the property for $295,000, of which $235,000 would be paid in cash and $65,000 by a 15 year purchase money mortgage. Nothing was said in the application respecting the obligation to pay brokerage commissions in the amount of $23,600. The Notice of Hearing to creditors to approve the contract of sale was consistent with the application. The Notice stated that at the hearing the Court would consider any higher or better offers than the $295,000 to be paid by W.R. Land Developers, Inc. It was not revealed that a lower offer not subject to any obligation to pay brokerage would be more advantageous to the debtor and its creditors.

On February 26, 1987, the Court authorized the sale of the property for $295,000 to W.R. Land Developers. The Court's Order recited that after the various liens on the property were satisfied, the balance would be held in an interest bearing account subject to further order of this Court.

The Court did not become aware of the involvement of a broker in the transaction until February 27, 1987, the day following the Order authorizing the sale, the Court received a letter from the attorney for the brokers asserting their claim for commissions.

On March 19th, 1987, Tiffany Realty and Golden Triangle made the present motion. No creditor opposed the motion, but the debtor's attorney filed an affidavit in opposition, stating that the debtor "has no objection to the payment of reasonable brokerage fees after this Court determines exactly what that amount is."

## DISCUSSION

Authorization to perform services for a debtor and the compensation to be paid for such services are two distinct matters governed by separate Code provisions. Section 327(a) of the Code covers employment. It provides that "the trustee [which includes the debtor-in-possession], with the Court's approval, may employ one or more ... professional persons ... to represent or assist the trustee in carrying out the trustee's duties under this title." Bankruptcy Rule 2014 provides that an order approving the employment of an auctioneer, or agent, or other professional person is to be made only on application by the trustee. The term trustee includes a debtor-in-possession. No such application was made here by the debtor-in-possession before it retained the two brokers here involved.

Long standing case law would deny a right to compensation for services performed without authority from the bankruptcy court. *In re Eureka Upholstering Co.*, 48 F.2d 95, (2d Cir.1931); *In re Progress Lektro Shave Corp.*, 117 F.2d 602 (2d Cir.1941). Judge Learned Hand stated the reasons as follows: The rule requiring prior court approval was adopted "to control serious abuses and [is] to be strictly observed; without an order of court upon full presentation of the relation of the proposed [professional] with all interests involved, not only may he not be retained, but he can recover nothing, no matter how beneficial or how arduous his services." *In re Eureka Upholstering Co., supra,* at 95. Ten years after *Eureka* was decided, the Second Circuit recognized the harshness of its inflexible rule, but continued to apply it by denying compensation to a claimant who "[a]cted throughout in good faith ... with [t]he consent and approval of the [bankruptcy] referee." *In re Progress Lektro Shave Corp., supra,* at 604.

However, there is substantial authority for a more flexible approach. Several Courts of Appeal, as well as bankruptcy courts within the Second Circuit permit *nunc pro tunc* relief in exceptional circumstances under the bankruptcy court's exer-

cise of its power as a court in equity. *In re Certain Special Counsel to Boston & Maine Corp.,* 737 F.2d 115, 119 (1st Cir. 1984); *Matter of Arkansas Company, Inc.,* 798 F.2d 645 (3rd Cir.1986); *Triangle Chemicals Inc. v. Hensley,* 697 F.2d 1280 (5th Cir.1983); *Lavender v. Wood Law Firm,* 785 F.2d 247, 248 (8th Cir.1986); *Matter of Laurent Watch Co.,* 539 F.2d 1231 (9th Cir.1976); *In re Stuart, Inc.,* 16 B.R. 296 (Bankr.W.D.N.Y.1981); *In the Matter of Kero-Sun, Inc.,* 44 B.R. 121, 124 (Bankr.D.Conn.1984).

These decision rely on *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197, where the Supreme Court observes: "[W]e do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. at 103, 87 S.Ct. at 277.

However, even these courts that have applied a more flexible *nunc pro tunc* rule, recognize that *"[n]unc pro tunc* approval should be limited to cases where extraordinary circumstances are present. Otherwise the Bankruptcy Court may be overly inclined to grant such approval influenced by claims of hardship due to work already performed." *Matter of Arkansas Company, Inc., supra,* at 649.

There are considerations peculiar to this case that suggest the presence of such "extraordinary circumstances." The sale was extremely beneficial to the debtor. For half its real property it received a sum, which, even after deducting the claimed commissions, is in excess of the value it placed on the whole property. As a result, the excess over liens appears to be almost enough to pay all the debtor's pre-petition debts in full. Therefore, the debtor should be able to fund a plan of reorganization which will leave some equity in the stockholders.

This means that payment of the commissions which the debtor contracted to pay Tiffany Realty and Golden Triangle should not operate to the detriment of creditors. On the other hand, to deny the brokers the compensation they have earned would give the debtor's stockholders a windfall.

It would be inequitable in the extreme to use a principle intended to protect creditors to create a windfall for the very persons who entered into the agreement to pay compensation and who have received the benefit of that agreement.

Until the debtor files a plan of reorganization, however, the Court cannot be certain what equity will be left in the stockholders of the debtor. Moreover, even if the Court were inclined to give retroactive approval to the employment of the brokers, it does not necessarily follow that $23,600 constitutes reasonable compensation.

For the foregoing reasons, the motion to authorize the employment of Tiffany Realty and Golden Triangle *nunc pro tunc* is granted with the exact amount of that compensation to be fixed when the debtor files its plan of reorganization, and all administrative expenses are fixed.

An Order consistent with this opinion is being issued contemporaneously.