**In re COMMAND SERVICES CORPORATION, Debtor.**

**Bankruptcy No. 87–00528.**

United States Bankruptcy Court,
N.D. New York.

March 11, 1988.

Sheehan, Phinney, Bass & Green, P.A., Manchester, N.H., Special Counsel, for debtor (Edmond J. Ford, of counsel).

Menter, Rudin & Trivelpiece, P.C. (Kevin Newman, of counsel), Syracuse, N.Y., for debtor.

Kim F. Lefebvre, Albany, N.Y., Trustee.

### MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court has before it for consideration the First Application for Interim Compensation of Sheehan, Phinney, Bass & Green, Prof. Ass'n. ("Sheehan"), together with an Application for Authority to Set Off Against Retainer ("First Application").

The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C.A. §§ 1334 and 157.

Command Services Corporation, d/b/a Command Systems Corporation of America ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp. 1987) ("Code") on April 17, 1987. By Order dated April 20, 1987, the Court appointed Menter, Rudin & Trivelpiece, P.C. to represent the Debtor in the Chapter 11 case.

Sheehan was appointed to act as Special Counsel to the Debtor pursuant to an Order of the Court dated May 14, 1987. On October 29, 1987, a supplemental Order was granted authorizing Sheehan to undertake additional tasks on Debtor's behalf.

The First Application seeks compensation for services rendered to Debtor during the period January 27, 1987 through July 31, 1987, although the Court notes that at paragraph 8 of the Supplemental Affidavit of Edmond J. Ford ("Ford Affidavit") sworn to the 24th day of November, 1987, the Court is alleged to have no jurisdiction to approve or deny the fees of Sheehan incurred by Debtor for pre-petition services.

It appears from the First Application, as well as the Application submitted in support of the Order of Appointment dated May 14, 1987, that Sheehan had commenced a pre-petition suit on Debtor's behalf in the Cheshire County Superior Court, State of New Hampshire ("state court") entitled "Command Services Corporation v. TCS Computer Associates Ltd., 87–E–018". Sheehan was also defending Debtor in an action in that same court entitled "Bank of Vermont v. TCS Computer Associates Ltd. and Command Services Corporation 87–E–014". The prior action is described generally as an action for the collection of a certain account receivable while the latter action seeks a declaration of the relative priorities and rights of creditors in the assets of TCS.

A hearing on the First Application was held before the Court on November 10, 1987 wherein the United States Trustee appeared and filed an Objection to the First Application. On November 25, 1987, Sheehan filed the Ford Affidavit in response to the Trustee's Objection.

It is not clear to the Court from either the Application submitted in support of the Order of Appointment, the First Application, or the Ford Affidavit, what the status of the state court litigation was in the fall of 1987. It is disclosed that action 87–E–018 seeks recovery of approximately $140,000.00 and that Sheehan had obtained an ex parte attachment of the assets of TCS Computer Associates Ltd. The First Application further discloses that Sheehan, through extensive discovery in one or both of the pending state court actions, developed a theory of recovery directly against the Bank of Vermont and two individual defendants which apparently led to the Supplemental Order of October 29, 1987. It appears, without certainty, that this third action directly against the Bank of Vermont, and others, seeks recovery of the same $140,000.00 account receivable referred to in 87–E–018.

If, in fact, all of the litigation in which Sheehan is representing the Debtor results in a recovery by Debtor's estate no greater than $140,000.00, then the Court is somewhat troubled by the instant First Application, as well as the attitude evinced by the Ford Affidavit.

Reduced to its simplest terms, the First Application seeks an Order modifying the stay imposed pursuant to Code § 362(a) so as to permit Sheehan to apply $7,700.00 of its $11,000.00 pre-petition retainer to the services rendered to Debtor prior to April 17, 1987, the date of filing, as well as approval of an additional $9,377.50 for services rendered to Debtor between April 17, 1987 and July 31, 1987.

■ With regard to the receipt of the $11,000.00 retainer, the Court cannot agree with the Sheehan position as contained in paragraph 8 of the Ford Affidavit that this Court is without jurisdiction to approve or deny fees for pre-petition services. Code § 329 very clearly authorizes a bankruptcy court to examine a debtor's payment of pre-petition attorney's fees so long as those

fees were paid, or agreed to be paid, within one year prior to filing, and were paid in contemplation of or in connection with the Chapter 11 case. Additionally, the Court's authority under Code § 329 is totally unrelated to a modification of the stay imposed pursuant to Code § 362. *See e.g. Ahlers v. Norwest Bank Worthington (In re Ahlers),* 794 F.2d 388, 393, n. 2, *rehearing en banc denied,* 794 F.2d 414 (8th Cir.1986), *rev'd on other grounds,* —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Four Star Terminals, Inc.,* 42 B.R. 419 (Bankr.D.Alaska 1984); *In re Riggin,* 40 B.R. 458 (Bankr.D.Md.1984);

While Sheehan's services pre-petition may not have been rendered in contemplation of the Chapter 11 case, they clearly were rendered in connection with it as Sheehan acknowledges in its First Application at paragraph 3 that Debtor's failure to collect the account receivable (which Sheehan was retained to collect) "was the precipitating cause of Debtor's bankruptcy." Thus, contrary to Sheehan's posture, the Court believes that it is required, pursuant to Code § 329, to examine Sheehan's pre-petition services in relation to its receipt of an $11,000.00 retainer.[1]

Sheehan points out that during the pre-petition period following its initial retention by the Debtor, it succeeded in being the first to attach all of the inventory of TCS Computer Associates Ltd. This is clearly commendable representation on Sheehan's part. However, the Court also notes that during the pre-petition period, January 27 through April 17, 1987, Sheehan committed the services of two of its partners and four of its associates to Debtor's representation. The involvement of that many attorneys may have been unwarranted, particularly when the majority of the time consumed was in the nature of office conferences and correspondence.

Upon review of the contemporaneous time records, the Court concludes that

Sheehan reasonably expended $5,500.00 of the fee retainer, thus leaving the balance to be allocated against post-petition services.

■ With regard to post-petition services, the First Application indicates that Sheehan expended some 4.9 hours post-petition, but pre-appointment. Under the strict view of fee applications in bankruptcy cases adopted by the United States Second Circuit Court of Appeals, the so-called "per se" rule, those hours are not compensable. *See Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.),* 655 F.2d 463 (2d Cir.1981), *cert. denied* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Progress Lektro Shave Corp.,* 117 F.2d 602, 604 (2d Cir. 1941); *In re Cuisine Magazine, Inc.,* 61 B.R. 210 (Bankr.S.D.N.Y.1986); *In re Sapolin Paints, Inc.,* 38 B.R. 807 (Bankr.E.D. N.Y.1984). But *see In re Rich Joyce Enter., Inc.,* 76 B.R. 42, 43–44 (Bankr.E.D.N. Y.1987) (citations omitted) (in extraordinary circumstances a bankruptcy court may permit *nunc pro tunc* relief with respect to the appointment and compensation of professionals under the exercise of its equity power); *In re S.T.N. Enter., Inc.,* 70 B.R. 823, 831 (Bankr.D.Vt.1987).

Thus, given the lack of extraordinary circumstances demonstrated in the case at bar, the Court begins its analysis of Sheehan's post-petition services with the entry on May 14, 1987.

The United States Trustee ("UST") has objected to the First Application's inclusion of time entries which are vague and in "block" form so as to prevent a meaningful judicial evaluation. While it is true that courts have rejected fee applications containing both vague and "block" type entries, the Court does not find Sheehan's First Application difficult to analyze from the latter standpoint. *See New York State Ass'n. for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983); *In re Petti-*

---

1. There appears to be some question as to whether Sheehan actually received the entire $11,000.00 pre-petition, or whether a balance of $6,000.00 was received post-petition. Paragraph 11 of the Ford Affidavit alleges that the Debtor's check was drawn on April 16, the day before the petition was filed and received by Sheehan on April 17, 1987, prior to the actual filing, while the contemporaneous time records submitted to the Court in support of the First Application reflect receipt of the $6,000.00 on April 24, 1987.

*bone Corp.*, 74 B.R. 293 (Bankr.N.D.Ill. 1987); *In re Esar Ventures*, 62 B.R. 204 (Bankr.D.Hawaii 1986). The UST's criticism regarding vagueness is in many cases well-founded. While the time entries may be clear to Sheehan, it causes the Court to spend an unnecessary amount of time in attempting to analyze and evaluate the time expended. *In re Esar Ventures, supra,* 62 B.R. at 204.

■ Finally, the UST objects to Sheehan's request for secretarial and clerical time of some $2,446.00 contained in the First Application. Sheehan responds that the Court approved compensation of secretarial time when it ordered the appointment of Sheehan upon an application which clearly described its intention to charge for that time. *See* Ford Affidavit, paras. 4–7 (Nov. 24, 1987).

Sheehan's suggestion that the Court is committed to compensate it for a particular service because it disclosed its intention to bill for that service in its application seeking appointment is rejected. Even assuming that the Court intended to restrict its ability to fully review Sheehan's subsequent fee applications by the terms of the Order of Appointment dated May 14, 1987, that Order simply authorizes the Debtor "to employ Sheehan, Phinney, Bass & Green, P.A. of Manchester, New Hampshire, to represent it as Special Counsel for the purposes set forth in Debtor's Application." The Order further makes clear that any fee award to Sheehan will be rendered only "after due application to this Court based on contemporaneous time records and a hearing". Nowhere does the Order bind the Court to any pre-employment approval of the amount, type or rate of compensation.

■ Secretarial time has been generally considered to be an item of overhead factored into an attorney's rate per hour, and not separately compensable. *See In re S.T.N. Enter., Inc., supra,* 70 B.R. at 823; *In re Wabash Valley Power Ass'n., Inc.,* 69 B.R. 471 (Bankr.S.D.Ind.1987); *In re Bonds Lucky Foods, Inc., No. 1,* 76 B.R. 664 (Bankr.E.D.Ark.1986). The Court can find no rational basis to deviate from this prevailing view of bankruptcy courts across the country.

While Sheehan's billing approach may be novel, this Court is not ready to embrace it. The Court notes also that the hourly rates sought by its respective attorneys, appear to be in line with those of other law firms within this Court's jurisdiction who do not bill for, nor seek, additional compensation for secretarial time in bankruptcy cases. Thus, the Court disallows separate compensation for secretarial time.

■ A bankruptcy court, in reviewing any fee application, is generally guided by the principles enumerated in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974), a non-bankruptcy case, made applicable in bankruptcy cases by *In re First Colonial Corp. of America,* 544 F.2d 1291, 1298–1299 (5th Cir.1977). *See also In re Ochoa,* 74 B.R. 191, 196 (Bankr.N.D.N.Y.1987). The Court is also mindful of the "parity" rule which dictates that, absent extenuating circumstances, all administrative expenses, including professional fees, are to be considered on a parity in a Chapter 11 case. *See* Code § 503(b), *In re IML Freight, Inc.,* 52 B.R. 124 (Bankr.D.Utah 1985). *Accord In re Nine Associates, Inc.,* 76 B.R. 943 (S.D.N.Y.1987).

While the First Application narrates Sheehan's efforts to date in seeking recovery of the $140,000.00 receivable, the ultimate outcome of the litigation is unknown at this juncture. Thus, the "results obtained" factor of *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 714, is particularly significant where the services being reviewed are consumed in pursuing a claim which may or may not benefit the Debtor's estate. In the instant case, this Court is further disadvantaged since the litigation is pending in another court, so that the Court must rely upon a narration of what is occurring.

■ Sheehan seems to peg the allowance of its fee request to the fact that it has attached the assets of TCS and has uncovered a theory of liability against the Bank of Vermont. However, neither of these

accomplishments have produced dollar one for creditors of the Debtor's estate, and they may never produce dollar one. While the Court does not seek to place Sheehan on a contingent fee arrangement, the Court must be cautious not to overburden the estate with administrative expenses. Thus, in dealing with an interim fee application pursuant to Code § 331, the Court is not obligated to compensate the professional in the full amount of its fee request, even though it may conclude that the services rendered were actual and necessary. *In re Four Star Terminals, Inc., supra,* 42 B.R. at 419; *In re Pettibone Corp., supra,* 74 B.R. at 293.

As previously indicated, the Court questions the need for the involvement of several different attorneys in the pending litigation in state court with the potential result that before the litigation is concluded, the attorneys' fees may approximate the optimum level of recovery.

Specifically, Sheehan's First Application seeks a fee of $9,175.50 for services rendered between May 14, 1987, the date of its appointment, and July 31, 1987. Of that amount, $7,416.00 was incurred by two attorneys, Edmond J. Ford and Debra L. Weiss, who appear to be the primary counsel assigned to the litigation. Further analysis of the hours expended by Ford and Weiss indicate that approximately $4,800.00 involved the preparation for and the taking of a deposition of one Norman Silberdick by both attorneys.

Having reviewed the First Application, the Ford Affidavit and the contemporaneous time records, the Court approves a fee for the post-petition, post appointment services of $5,000.00.

In summary, the Court approves the pre-petition retainer to the extent of $5,500.00, and further approves an interim fee for attorneys' services rendered post-May 14, 1987 through July 31, 1987 of $5,000.00. The balance of the paid retainer ($500.00) shall be held by Sheehan in an escrow account to be disbursed upon further application to and Order of the Court.

Turning to Sheehan's request for reimbursement of expenses, the Court first deals with photocopy and telephone expenses, which apparently have been arrived at by utilizing a percentage of the total fee sought. The UST has objected to the utilization of a percentage as being contrary to Code § 330(a)(2) in that it does not reflect "actual and necessary expenses." The Ford Affidavit responds that Sheehan has no present ability to count copies nor chart long distance telephone calls and that their use of a percentage is a reasonably equitable allocation of expense.

The Court adopts the language of Bankruptcy Judge Francis Conrad in *In re S.T.N. Enter., Inc., supra,* 70 B.R. at 834 (citations omitted): "An attorney, claiming reimbursement from the estate for expenses incurred in the case must likewise furnish enough specificity for the Court to establish whether a given expense was both actual and necessary under 11 U.S.C. § 330(a)(2). Only fully documented, actual, out-of-pocket expenses will be reimbursed." Thus, the Court cannot condone, for whatever reason, a percentage method to establish actual and necessary expenses within the meaning of Code § 330(a)(2).

The UST objects to reimbursement of Deposition Expenses and Special Steno Service totaling $1,364.45. Sheehan responds that the expense resulted from two days of depositions of an Edward Hayden and Norman Silberdick. In support thereof, Sheehan attaches two invoices of Jim Connelly, Court Reporting Services, Bedford, New Hampshire. The Court finds these expenses to be actual and necessary.

Finally, objection to reimbursement of an expense for investigation and reports is interposed by the UST as lacking explanation and itemization. Sheehan again responds by providing invoices and explanation. *See* Ford Affidavit, *supra,* at para. 13. Thus, the Court allows the expense in the sum of $899.00.

Of the remaining expenses for which reimbursement is sought, the Court questions only the $74.23 for Lexis research. This Court has consistently held that similar expenses are not reimbursable from

the Debtor's estate. *See In re Cuisine Magazine, Inc., supra,* 61 B.R. at 210.

Thus, the Court authorizes reimbursement of the following:

| | |
|---|---:|
| Deposition Expenses | $ 825.70 |
| Investigation & Reports | 899.00 |
| Filing Fees | 63.00 |
| Messenger Fees | 170.25 |
| Services of Process | 674.18 |
| Special Stenographic | 538.75 |
| Subpoena Fees | 130.16 |
| Travel | 188.00 |
| | |
| Total | $3,489.04 |

IT IS SO ORDERED.