**In re WIZARD ENTERPRISES, INC., (Debtor).**

**Bankruptcy No. 88–81185–LC11.**

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 22, 1990.

Gayle H. Marshall, and Terry J. Johnson, Lake Charles, La., for debtor.

Carolyn Cole, Staff Counsel, Shreveport, La., for the U.S. Trustee.

## REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

This matter comes before the Court on the application of Mr. Terry J. Johnson ("Applicant"), as Special Counsel for the Debtor in possession, for professional fees. This is a core proceeding inasmuch as compensation of professionals affects the administration of the debtor's estate under 28 U.S.C. Section 157(b)(2)(A). This Court has jurisdiction by virtue of 28 U.S.C. Section 1334 and by virtue of the general reference to the Bankruptcy Court by the District Court under District Court Rule 22.1, incorporated into the Local Bankruptcy Rules as Local Rule 1.2. No party has sought to withdraw the reference to this Court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ The issue presently before the Court for determination is the compensability of an expense claim for Lexis computer research. Applicant was appointed special counsel for the Debtor in Possession by order of this Court dated January 18, 1989, effective December 25, 1988. The purpose of the appointment was to represent debtor in connection with efforts by the State of Louisiana to revoke or suspend liquor licenses of the debtor in possession. Debtor operates a chain of convenience stores in Southwest Louisiana.

The application (Exhibit 1) covers the time period of December 25, 1988 through February 3, 1989. No objections were filed to the application except that of the United States Trustee, which objected solely to the expense charge, citing *In re Command Services Corporation*, 85 B.R. 230 (Bankr. N.D.N.Y.1988), which holds that computer research expense is not reimbursable by the estate.

■ This is not the first time this Court has been confronted with this issue. It is, however, the first and only occasion on

which evidence has been adduced on behalf of the applicant concerning the same. The burden of establishing the reasonableness of compensation and reimbursement under 11 U.S.C. Section 330 is on the applicant. 11 U.S.C. Section 503. Statements of counsel urged in oral argument are not evidence. Due to the repeated efforts by counsel seeking such reimbursement and the assurance by counsel in this matter that evidence would be adduced in support of the reimbursement, this Court continued the hearing from November 30, 1989, to January 11, 1990, and allowed the applicant and the United States Trustee to file briefs in support of their positions. The hearing was held on January 11, 1990.

Mr. Johnson testified that the Lexis charge was incurred as a result of his research into the issue of whether proceedings by the State of Louisiana to suspend debtor's licenses or permits could be removed to the Bankruptcy Court, due to their relationship to the Bankruptcy case. The details of the charges for Lexis are contained in Exhibit 2. The "User Undiscounted Total" is $77.12.

Mr. Johnson testified that he has considerable experience in the field of representing parties before the various agencies enforcing regulations concerning the sale of alcoholic beverages, an area which constitutes approximately 85% of his practice. The Lexis service base charge to his office is $125.00 per month, the reimbursement of which is not sought. A particular matter or client can be isolated by the user and such charges are routinely charged to other (presumably non-bankruptcy) clients.

Mr. Johnson affirmatively testified that the use of Lexis in this instance both decreased the time used in the research, due in part to the facts that (a) counsel had no direct access to the Bankruptcy Reporter and various regional reporting services published by West Publishing Company and (b) Lexis is "more current" than any published source. Although access to the Bankruptcy Reporter may have been available to special counsel, it was not available from Mr. Gayle Marshall, counsel to the Debtor in Possession, with whom special counsel consulted. The other reporters were not available in any library in the area, according to Mr. Johnson, and gaining access to same would have necessitated a trip to Baton Rouge, Louisiana and approximately two hours of travel time (one way) from Lake Charles.

Ultimately, the underlying license disputes were amicably resolved. Although debtor's operations were suspended temporarily, the parties agreed in essence that the suspensions would be enforced on debtor's various stores on a staggered basis, resulting in an economic benefit to the debtor's estate. Mr. Johnson testified that the threat of removal of the proceedings to the Bankruptcy Court was useful in the negotiating process that led to this arrangement.

Mr. Johnson's time for the research is reflected in the application as follows:

\*    \*    \*    \*    \*    \*

1/9/89    Research power of ABC Commissioner under Title 26 of Louisiana Revised Statutes; research on removal power to Bankruptcy Court; Lexis research researching same.     4.0

On questioning by the Court, Mr. Johnson testified that his total research time, absent computer assisted research, would have totalled eight to nine hours, but would not have been as current. This estimate was predicated on an assumption that the reporters needed were locally available, therefore precluding the issue of travel time.

The Court notes that the only anomaly regarding the application is the inexplicable (by all accounts) date of services as reflected on the Lexis charge, i.e., January 4, 1989, whereas Mr. Johnson testified that the services were actually performed on January 9, 1989.

The cases dealing with this issue fall into three general categories. First, many Courts have consistently disallowed same. *See, e.g., In re Command Services Corp., supra, citing In re Cuisine Magazine, Inc.,* 61 B.R. 210 (Bankr.S.D.N.Y.1986). The underlying premise supporting disal-

lowance in these cases is the apparent assumption that the charge is included in the hourly rates charged by a law firm and to allow their recovery would be duplicative. Other courts disallowing reimbursement classify these services as overhead, and thus non-compensable. *See, e.g., Matter of Pothoven*, 84 B.R. 579 (Bankr.S.D. Iowa 1988); *In re Michigan General Corp.*, 102 B.R. 554 (Bankr.N.D.Tex.1988).

A second line of cases has allowed charges either without explanation [*See In re Tom Carter Enterprises*, 55 B.R. 548 (Bankr.C.D.Calif.1985); and *In re Met–L–Wood Corporation*, 103 B.R. 972 (Bankr. N.D.Ill.1989)] or with only brief reasons. *See In re Washington Mfg. Co.*, 101 B.R. 944 (Bankr.M.D.Tenn.1989). In the latter case, the Court noted the "established practice of attorneys' charging for computer research to the affected client." *See also In re Leonard Jed Co.*, 103 B.R. 706 (Bankr.D.Md.1989).

The third approach, and in this Court's mind the most logical, is to determine the matter on a case by case basis. In *In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987) the court allowed computer time that was both necessary and attributable to a particular client, reasoning that "it is better to have the expense of computer research charged up front rather than hidden in the hourly rate." *Ibid*, page 732. The Court further observed that the time at issue there was spent on a "fairly mundane matter", and that the

> "purpose of computer research is to cut down the amount of time necessary to research a particular issue, not to increase the costs. The same amount of research should have been able to be done with digest books in the same amount of time spent by the law student on Lexis in this case and at no extra cost to the estate. If some showing is not made that the use of computers to research cut down the total time *necessary* to research a particular issue, the Court will be inclined to find that the expense of computer research is not necessary."

*Ibid.*, page 732 (emphasis supplied.)

This Court concludes that with the single exception of the discrepancy in the dates of the research discussed *supra*, which bears no further discussion, the applicant has established that the services performed were of benefit to the estate, that the use of the Lexis service resulted in a cost savings to the estate, and that the issue being researched was a sophisticated—not a mundane—matter. *Further, this research cannot be classified as learning time or a matter on which information could be obtained from routine research using digests and reporters.* Accordingly, this Court concludes that the charge of $77.12 for the Lexis service was both reasonable and necessary, and thus compensable under 11 U.S.C. Section 330.

This Court is not unmindful of the potential increase in the time in Court attributable to hearings on this issue, since doubtless once the gates have opened, a plethora of similar applications will be filed, followed by objections to same. This Court does not by these findings intend to minimize the burden of proof on such applications. Mere statements of counsel in oral argument in support of computer assisted research charges will not suffice as explanations for the Court to award reimbursement of same from the estate. Whether the Court can approve such charges based on bare applications which fail to sufficiently address the factors discussed in these Reasons for Decision, as opposed to testimony concerning each such application, is a matter the determination of which must await another opportunity. These reasons for decision emphasize that the monthly charges for Lexis services could in no case have been compensable by the estate.

## CONCLUSION

Pursuant to the foregoing, the application of Mr. Terry Johnson as Special Counsel is approved. A separate order will be entered.