**In re Arthur P. LAFERRIERE, Ann M. Laferriere, Debtors.**

No. 01–10643.

United States Bankruptcy Court, D. Vermont.

Nov. 13, 2002.

---

**524**

Kevin Purcell, Albany, NY, Office of the United States Trustee.

Glenn Arthur Robinson, Diamond & Robinson, P.C., Newport, VT, for Debtors.

### AMENDED[1] MEMORANDUM OF DECISION

COLLEEN A. BROWN, Bankruptcy Judge.

The United States Trustee for the Northern District of New York and the District of Vermont ("U.S.Trustee") filed a "Motion to Determine if Fees Paid were Excessive Pursuant to 11 U.S.C. § 329(a) & (b) and Fed. R. Bankr.P.2016 and 2017, to Compel Disclosure of Fees and to Disgorge Excessive Fees" (doc. #s 25–1 and 25–2) with regard to the attorneys' fees of the Debtors' original attorney, Diamond & Robinson, P.C. (hereinafter, "D & R"). D & R filed papers in opposition to the Motion (doc. # 36–1) (hereinafter, the "Opposition"). On February 12, 2002, the Court held a hearing on the U.S. Trustee's Motion and D & R's Opposition. The Court reserved judgment and requested the parties submit Memoranda of Law supporting

their respective positions on the following three issues:

(1) Whether, pursuant to 11 U.S.C. § 329(a), D & R provided service "in contemplation of or in connection with" the Debtors' case;

(2) Whether both the pre- and post-petition payments from the Debtors' retainer account with D & R were "payments" requiring disclosure under 11 U.S.C. § 329(a) and Fed. R. Bankr.P 2016(b); and

(3) Whether the concept of "excusable neglect" applies when bankruptcy disclosure requirements are violated.

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 157 and 1334 and finds this to be a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Based upon the February 2002 hearing and the parties' papers, and for the reasons stated below, the U.S. Trustee's Motion is GRANTED.

### I. BACKGROUND

There is no dispute regarding the material facts of this case. At the February 12, 2002 hearing, the Court took testimony on the U.S. Trustee's Motion and D & R's Opposition to the Motion. Since the U.S. Trustee's Motion provides a detailed outline of the facts presented at the hearing and the Court finds the U.S. Trustee's recitation to be accurate, only an abbreviated summary of the facts is set forth here.

The record reflects that Debtors Arthur P. Laferriere and Ann M. Laferriere originally hired D & R in February 2000, at a time when they were contemplating filing for bankruptcy relief. To that end, D & R sent the Debtors a retainer letter seeking

---

**1.** This Amended Memorandum of Decision supercedes the Memorandum of Decision entered October 23, 2002. The only substantive change made is changing the Debtors' filing date to April 30, 2001; all other changes are either grammatical or stylistic.

an initial $3,500 retainer deposit. *See* Letter from Glenn Arthur Robinson, Esq., Diamond & Robinson, P.C., to Arthur & Anne Laferriere (Feb. 14, 2000), attached as Ex. D. to U.S. Trustee's Motion (hereinafter, the "Retainer Letter"). The reference line of the Retainer Letter read "Bankruptcy." *Id.* The Debtors signed the Retainer Letter on February 16, 2000 and sent in the $3,500 retainer deposit on March 20, 2000. It is important to note that, in order to pay the retainer fee, the Debtors borrowed $3,500 from their daughter and had D & R prepare and file a loan and security agreement between themselves and their daughter, giving her a security interest in certain inventory they owned and making her one of their secured creditors. At this initial stage, the Debtors were hoping to file for bankruptcy protection under chapter 13 of the Bankruptcy Code. Ultimately, however, on April 30, 2001, they filed a voluntary petition under chapter 7 of the Code, over a year after first consulting with D & R. At the time they filed their bankruptcy case, the Debtors had a $1,191.58 balance in their D & R retainer account.

In addition to the original $3,500 retainer deposit, the Debtors made two additional payments to D & R: $1,600.00 on May 15, 2001 and $1,200.91 on July 2, 2001. Thus, in total, the Debtors paid D & R $6,300.91. However, contrary to the requirements of 11 U.S.C. § 329 and Fed. R. Bankr.P. Rule 2016, these transactions were not revealed to the Court as part of the Debtors' bankruptcy filing. Rather, the Rule 2016(b) Statement submitted by D & R disclosed the receipt of only $1,000.00, the flat fee it charged the Debtors for their chapter 7 case. Moreover, when the Debtors finally filed for bankruptcy protection, D & R did not include: (1) the Debtors' retainer balance on Schedule B; or (2) the Debtors' daughter as a secured creditor on Schedule D.

## II. DISCUSSION

### A. The Standard Regarding Disclosure

Debtors' transactions with attorneys are governed by 11 U.S.C. § 329, which provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Section 329(a) of the Bankruptcy Code "requires a debtor's attorney to report to the court compensation paid or agreed to be paid for services rendered 'in contemplation of or in connection with' the case, 'if such payment or agreement was made after one year before the date of the filing of the petition.'" *Arens v. Boughton*

*(In re Matter of Prudhomme)*, 43 F.3d 1000, 1002 (5th Cir.1995) (quoting 11 U.S.C. § 329(a)). Moreover, § 329(b) authorizes courts to order the disgorgement of any compensation that exceeds the reasonable value of the services rendered. *See* 11 U.S.C. § 329(b).

■ Further, complementary Bankruptcy Rule 2017 allows courts to determine whether *any* payment made in contemplation of the filing of a bankruptcy case by a debtor to an attorney, for services rendered or to be rendered, is excessive:

Rule 2017. Examination of Debtor's Transactions with Debtor's Attorney.

(a) Payment or Transfer to Attorney Before Order for Relief. On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether *any payment* of money or any transfer of property by the debtor, *made* directly or indirectly and *in contemplation of the filing of a petition under the Code* by or against the debtor or before entry of the order for relief in an involuntary case, *to an attorney for services rendered or to be rendered is excessive.*

Fed. R. Bankr.P.2017 (emphasis added). Within bankruptcy practice, § 329 and Rule 2017 are part of what is colloquially referred to as "the disclosure requirements."

■ The approach within the Second Circuit "has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard. No exceptions are to be made based upon inadvertency (slipshodness) or good faith." *Matter of Kero–Sun, Inc.*, 58 B.R. 770, 780 (Bankr.D.Conn.1986) (citing *General Motors Acceptance Corp. v. Updike (In re H. L. Stratton, Inc.)*, 51 F.2d 984 (2d Cir. 1931) (denying compensation to attorneys for a bankruptcy receiver because, *inter*

*alia,* the attorneys' disclosure affidavit failed to state with specificity the law firm's prepetition representation of a bank that had asserted an offset against the receiver, despite having made oral representation to the Court of the same)). "If the rule [on disclosure] is to have validity and the evils against which it is aimed are to be eliminated, it should be enforced literally." *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Matter of Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir. 1981). The purpose for the Bankruptcy Code's broad and stringent disclosure requirements are clear:

Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied.... The court may exercise its discretion to deny or reduce fees for counsel's failure to disclose its fee arrangements *whether or not actual harm* accrues to the estate.... Whatever the explanation for disclosure inadequacies, it reflects poorly on responsible counsel; ...; and the resulting potential for frustration of the Code's policy of thorough scrutiny is unacceptable....

*Cohn v. U.S. Trustee (In re Ostas)*, 158 B.R. 312, 321 (N.D.N.Y.1993) (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D.Me.1991), *with Ostas'* citation omissions and emphasis additions). This stringent standard has been adhered to by the Second Circuit for almost three-quarter's of a century. *See, e.g., Kero–Sun*, 58 B.R. at 780 (referring to *Stratton*, the 1931 Second Circuit case, as the "seminal case" regarding violations of disclosure requirements).

■ Complete disclosure is mandated under the Bankruptcy Code and Rules and failing to meet those disclosure requirements with total candor can result in severe consequences. "Indeed, it has long been the practice in [the Second Circuit] to

deny compensation to counsel who fail to comply with the disclosure provisions ...." *Futuronics*, 655 F.2d at 469; *see also Kero–Sun*, 58 B.R. at 779 (finding attorney's violation of disclosure requirements, *inter alia*, warranted ordering the disgorgement of fees not reported); *Prudhomme*, 43 F.3d at 1003 ("[T]he court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtor's counsel for nondisclosure."); *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 937–38 (2d Cir.1979) (finding no abuse of discretion in court's order of disgorgement of all fees where counsel failed to divulge all connection with debtor and failed to disclose all fees); *cf., Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941) (using denial of compensation as a tool for strict enforcement of conflict-of-interest rules).

### B. Services "in contemplation of or in connection with the case"

The analysis of § 329(a) of the Bankruptcy Code must begin with the observation that the phrase "in contemplation or in connection with" is written in the disjunctive. *See In re Mayeaux*, 269 B.R. 614, 622 (Bankr.E.D.Tex.2001). Thus, § 329(a) incorporates two different concepts and requires two different standards. *See id.* (citations omitted).

#### 1. "In contemplation of"

If a debtor pays a fee for underlying professional services at a time he or she is thinking about or "contemplating" bankruptcy, then the payment is said to be made "in contemplation of" the bankruptcy case. *See id.* Whether a debtor is contemplating bankruptcy is a subjective test, based upon the debtor's state of mind, " 'i.e., whether, in making the transfer, the

debtor is influenced by the possibility or imminence of a bankruptcy proceeding.' " *Id.* (quoting *Wootton v. Ravkind (In re Dixon)*, 143 B.R. 671, 675 n. 3 (Bankr. N.D.Tex.1992)). Moreover, courts have broadly interpreted the phrase "in contemplation of." *Id.* at 623 (quoting *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 476–78, 53 S.Ct. 703, 77 L.Ed. 1327 (1933) ("[N]egotiations to prevent bankruptcy may demonstrate that the thought of bankruptcy was the impelling cause of the payment.")); *see also Brown v. Luker (In re Zepecki)*, 258 B.R. 719, 724 (8th Cir. BAP 2001); *In re Keller Fin. Serv. of Fla., Inc.*, 248 B.R. 859, 878 (Bankr.M.D.Fla. 2000).

In this instance, the Court finds the Retainer Letter clearly demonstrates the Debtors were contemplating bankruptcy as early as February 2000. First, the reference line of the Retainer Letter reads "Bankruptcy." Second, the content of the letter explicitly evinces the Debtors' payment of the retainer fee was intended to allow them to file bankruptcy. In its conclusion, D & R stated, "... we will not file bankruptcy on your behalf *until we actually receive the $3,500 retainer fee.*" Retainer Letter, attached as Ex. D. to U.S. Trustee's Motion (emphasis added). The combination of the Retainer Letter's reference line and the content of the letter persuades the Court that the Debtors' March 20, 2000 payment of the $3,500 retainer fee was influenced by the anticipation or imminence of a bankruptcy proceeding.

Likewise, each invoice D & R generated for the Debtors, from February 2000 through October 2001, referenced "Bankruptcy." *See* D & R Invoices, attached as Ex. B. to U.S. Trustee's Motion (hereinafter, "D & R Invoices"). Like the Retainer Letter's reference line, the repeated notation of "Bankruptcy" for the

reference of *each* monthly invoice strongly suggests the Debtors were engaging D & R's services in contemplation of their bankruptcy case and that D & R understood this to be the Debtors' intention. This conclusion is inevitable whether the Court limits its examination to the one-year look-back period or considers the entire period after the retainer letter.

The D & R Invoices also reflect when the Debtors paid D & R for its services rendered in contemplation of the Debtors' bankruptcy case. For each month that a payment was made, there is a statement of receipt of payment at the bottom of the invoice. Thus, even if the Debtors deposited the $3,500 retainer fee with D & R outside the one-year look-back period, by its own admissions on its invoices, D & R was not paid for its services rendered in contemplation of the Debtors' bankruptcy case until it earned the corresponding fees.[2] *Cf., e.g.,* D & R Invoice # 18806 (Mar. 30, 2000) at 3 (indicating that, on March 20, 2000, there was a payment of $3,500 *to* D & R's Trust Account), attached as Ex. B. to U.S. Trustee's Motion, *with* D & R Invoice # 19187 (May 29, 2000) at 2 (indicating there was a $1,815.02 balance of Client funds and that, on May 1, 2000, there was a payment of $165 *from* D & R's Trust Account), also attached as Ex. B. Thus, within the D & R Invoices, there is ample evidence showing the Debtors retained D & R and made payments to D & R—both within and outside § 329(a)'s one-year look-back period—because the Debtors anticipated the need for a bankruptcy proceeding.

Until D & R earned its fees however, the monies in the retainer account was owned by the Debtors. The Debtors had a $1,191.58 balance in their retainer account with D & R when they filed their chapter 7 case. The Court finds that this retainer balance was property of the Debtors. *See Prudhomme,* 43 F.3d at 1004 ("If a debtor retains an equitable interest in an unearned prepetition retainer, the unearned portion becomes property of the estate upon the filing of the petition for bankruptcy.") (citing 11 U.S.C. § 541(a)(1) (equitable interests of the debtor become the property of the estate)). It likewise finds that D & R's failure to list this asset in Debtors' schedules to be a significant omission.

### 2. "In connection with"

Just as the courts give broad interpretation to the phrase "in contemplation of," bankruptcy courts also find the phrase "in connection with" to have a broad scope. *See Ostas,* 158 B.R. at 321; *see also In re Command Services Corp.,* 85 B.R. 230 (Bankr.N.D.N.Y.1988). However, bankruptcy courts apply a more objective standard to determine if a debtor has made payments *in connection with* his or her bankruptcy case. *See Mayeaux,* 269 B.R. at 623. Thus:

[i]f it can be objectively determined that the *services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case,* then such services are deemed to have been rendered in connection with the bankruptcy case and the attorney has a duty to disclose any compensation received or to be received for such services.

---

**2.** *See, e.g.,* VERMONT RULES OF PROFESSIONAL CONDUCT, R.1.5, History, Comment, "Terms of Payment" ("A lawyer may require advance payment of a fee, but is obligated to return any unearned portion."); R. 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice ... and refunding any advance payment of a fee that has not been earned.").

*Id.* (citing *Keller Fin. Serv.,* 248 B.R. at 879; *Ostas,* 158 B.R. at 321) (emphasis added). Hence, contrary to D & R's contention that only work on the Debtors' chapter 7 case should be considered services rendered in connection with the Debtors' bankruptcy case, the Court finds the following services were also rendered in connection with the Debtors' bankruptcy case: (i) work related to the security agreement between Debtors and their daughter; (ii) work related to defending two lawsuits brought by an unsecured creditor against Debtor Mrs. Laferriere; (iii) work related to trying to lease the Debtors' business property; (iv) work relating to harassing phone calls from a creditor; and (v) work relating to the formulation of a chapter 13 plan for the Debtors. To one extent or another, all of this work had a direct impact on the ultimate filing of the Debtors' bankruptcy case. In fact, the Court finds that all the services documented in D & R's invoices—from February 2000 through October 2001— were determinative of the contents and timing of the Debtors' bankruptcy case. Thus, the Court finds that the additional payments the Debtors made to D & R [3] were also made in connection with their bankruptcy case. Finding D & R's services were rendered in connection with Debtors' bankruptcy case, the Court also finds all the fees paid for such services from one year prior to the Debtors' filing for bankruptcy until the time the Debtors terminated D & R's services are subject to the Bankruptcy Code's disclosure requirements.

### C. Disclosure of Payment from the Debtors' D & R Retainer Account

The Debtors paid a $3,500 retainer fee to D & R in March 2000, over one year before filing for bankruptcy protection. D & R contends that because the retainer fee was deposited with D & R more than one year before the Debtors filed their chapter 7 case, the Court is barred from examining that fee. This Court finds the analysis to be more complicated than that and reaches a different conclusion.

The general rule is that courts are limited to a one-year look-back under § 329(a). However, this look-back period is based upon a presumption that may be rebutted by fraud or concealment. *See Prudhomme,* 43 F.3d at 1003 (citing COLLIER ON BANKRUPTCY for proposition that "one-year period mentioned in § 329(a) is based upon the 'apparent presumption' that any compensation paid before the year prepetition was not for services rendered in contemplation of bankruptcy" and, therefore, such presumption can be rebutted by fraud or concealment; *further* citing *In re Bennett,* 133 B.R. 374, 380–81 (Bankr.N.D.Tex.1991), for principle that in a court of equity, statute of limitations may be tolled by the inequitable conduct of the parties; additional citations omitted). Further, Rule 2017(a) explicitly authorizes bankruptcy courts to determine "whether *any* payment of money ... by the debtor, made directly or indirectly *and in contemplation of the filing of a petition under the Code* ... to an attorney for services rendered or to be rendered is excessive." Fed. R. Bankr.P.2017 (emphasis added); *see also Prudhomme,* 43 F.3d at 1003. Additionally, case law is clear that a debtor's attorney must "lay bare *all* its dealings, antecedent and anticipated, regarding compensation for work *'in contemplation of or in connection with'* the case." *Ostas,* 158 B.R. at 321 (emphasis in original) (citations omitted). Thus, in instances where fraud or concealment is

---

**3.** $1,600.00 paid on May 15, 2001 and   $1,200.91 paid on July 2, 2001.

shown, the one-year time limitation of § 329(a) may be rebutted, and the Court has the authority to examine any payment made in contemplation of or in connection with the filing of a bankruptcy case.

The Court is particularly persuaded by the rationale and conclusions of *Prudhomme*, which it finds materially analogous to the instant case and very instructive. In *Prudhomme*, the debtors agreed to pay their attorney a $75,000 retainer fee, with $50,000 being paid more than a year before debtors filed for bankruptcy protection. *See* 43 F.3d at 1002. The attorney failed to disclose payment of the entire retainer. *See id.* The bankruptcy court ordered the full $75,000 disgorged; both the district court and Fifth Circuit affirmed the bankruptcy court's order. *See id.* Since the $25,000 balance had been paid within one year of the debtors' filing for bankruptcy, the Fifth Circuit concluded it fell squarely within § 329(a); therefore, there was no issue regarding ordering the disgorgement of that portion of the retainer fee. *See id.* Notably, the Fifth Circuit also found the bankruptcy court's decision regarding the disgorgement of the $50,000 supportable: (1) under § 329(a), as the "reporting requirement . . . does not expressly provide a limitations period for disgorgement," *id.* at 1002–03; (2) under Bankruptcy Rule 2017(a); (3) under the "renowned" bankruptcy treatise, COLLIER ON BANKRUPTCY; and (4) under the bankruptcy court's "broad discretionary powers in awarding and denying fees paid in connection with bankruptcy proceedings . . ." *Id.* at 1003.

■ Here, the U.S. Trustee has presented irrefutable evidence that during the one-year period prior to the Debtors'

bankruptcy filing, D & R received far more than the $1,000 it revealed on its Rule 2016(b) Disclosure Statement. *See, e.g.*, D & R Invoices, attached as Ex. B. to U.S. Trustee's Motion. Thus, the Court finds that D & R concealed payments received from or on behalf of the Debtors in connection with their bankruptcy case during the one-year period prior to their filing of the bankruptcy case. Since the Court has found that all services rendered by D & R on behalf of the Debtors were either in contemplation of or in connection with their bankruptcy case, and now finds concealment on the part of D & R, it concludes it is well within its discretion to examine the payment of the $3,500 retainer and any payments made by the Debtor to D & R prior to the one-year look-back period set forth in § 329(a).[4]

### D. Applicability of "Excusable Neglect" Standard

■ In Bankruptcy Code and Rules disclosure matters, attorneys are held to the strictest standards. Within the Second Circuit, the disclosure standard "has uniformly been to *decide Bankruptcy Code and Rule disclosure violations with an inflexible standard.*" *Kero–Sun*, 58 B.R. at 780 (emphasis added); *see also Stratton*, 51 F.2d 984 (denying attorneys compensation where, although orally disclosed to court, attorneys' affidavit failed to state with specificity prepetition representation of an interested party). Equally plain are the consequences to be suffered for less-than-full disclosure: "Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied." *Ostas*, 158 B.R. at 321. Moreover, allowing a flexible standard in deter-

---

4. The Court further highlights that while the Debtors *deposited* $3,500 in a trust account with D & R, *i.e.*, made a payment of a retainer fee, D & R was not paid from the trust account, *i.e.*, the retainer money, until the Debtors authorized such payment. *See supra* note 2.

mining disclosure violations could easily frustrate the Code's policy of thorough scrutiny. *See id.; see also Futuronics,* 655 F.2d at 469 ("If the rule [on disclosure] is to have validity and the evils against which it is aimed are to be eliminated, it should be enforced literally.").

◼◼◼◼ Given this clear precedent, the Court is persuaded that an "excusable neglect" standard should not be the rule for determining a Bankruptcy Code or Rule disclosure violation in this District. Under an "excusable neglect" standard, a court is permitted to consider arguments of inadvertence, mistake, carelessness, or intervening circumstances beyond a party's control. *See, e.g., Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. P'ship (In re Pioneer Investment Services Co.),* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (discussing "excusable neglect" in the context of Fed. R. Bankr.P. Rule 9006(b)(1)). However, in instances of disclosure violations, *"No exceptions* are to be made based upon inadvertency (slipshodness) or good faith." *Kero–Sun,* 58 B.R. at 780 (emphasis added). Rather, the Court believes the standard should be something akin to the "extraordinary circumstances" standard applied to requests for bankruptcy approval of retaining professional persons *nunc pro tunc. See, e.g., In re Keren Ltd. P'ship,* 189 F.3d 86 (2d Cir.1999) (establishing the Second Circuit's policy that, absent extraordinary circumstances, professionals may only be employed on behalf of debtors with prior court approval); *cf., In re East Hill Mfg. Corp.,* No. 97–11884, slip op. at 10–11 (Bankr.D.Vt. Jan. 25, 2001) (emphasizing that disclosure requirements are mandatory and will be enforced in all cases, but the specific facts of the case constituted extraordinary circumstances warranting the court employing its equitable powers to allow attorney's fees).

◼◼ From the facts presented in the instant case, the Court finds that D & R's Rule 2016 Disclosure Statement supplied less than the full measure of disclosure required by § 329 and Rule 2016. D & R disclosed receipt of only $1,000, the flat fee it charged the Debtors for their chapter 7 case while the evidence clearly establishes D & R received more than $1,000 from or on behalf of the Debtors for services rendered in contemplation of or in connection with the Debtors' bankruptcy case. D & R's invoices show the Debtors paid significantly more than $1,000 for services rendered in contemplation of or in connection with their bankruptcy case. The invoices also show two post-petition payments to D & R in connection with the Debtors' bankruptcy case; and, the record makes clear that D & R never submitted an amended disclosure statement to report these additional payments. Thus, even assuming the Court did not examine the monies paid more than one year prior to the Debtors filing for bankruptcy relief, the U.S. Trustee's evidence demonstrates D & R did not abide by the bankruptcy disclosure requirements regarding the payments made during the year prior to the Debtors' filing their bankruptcy case or regarding the post-petition payments made by the Debtors.

Further, the Court finds D & R has not presented any extraordinary circumstances that justify it not fully disclosing all payments it received from Debtors in connection with their bankruptcy case. For example, "simply forgetting" to list the Debtors' daughter as a secured creditor-after preparing loan documentation to ensure the loan was secured-clearly does not rise to the level of extraordinary. Rather, at best, it is a situation of slipshodness—an excuse not tolerated within the Second Circuit. The Court is equally unpersuaded by D & R's other arguments

(*e.g.,* the "paid" verses "earned" argument), especially since D & R has not presented a single case to support any of its arguments. Therefore, since D & R cannot offer any extraordinary circumstance that would justify its failure to comply with the Bankruptcy Code and Rules' disclosure requirements, the Court finds D & R is subject to having all its compensation denied and ordered disgorged.

### III. CONCLUSION

After consideration of the entire record, the Court finds, initially, that all services rendered by D & R on behalf of the Debtors, *i.e.,* from the date of the Retainer Letter forward, were in contemplation of or in connection with the Debtors' bankruptcy case. Secondly, the Court finds that because D & R concealed payments received from or on behalf the Debtors, the Court may examine whether any of the fees paid were excessive, without being limited to the one year period set forth in § 329(a). Thirdly, since D & R did not comply with the Bankruptcy Code and Rules' disclosure requirements, the Court finds D & R in violation of the Rule 2016 requirements. Hence, all fees received by D & R are subject to disgorgement. Finally, the Court finds D & R has not demonstrated any extraordinary circumstances in the present case that warrant excusing it from complying with the Bankruptcy Code and Rules' stringent disclosure standards. Thus, the Court GRANTS the U.S. Trustee's Motion and orders that all fees paid are to be disgorged.

This Memorandum constitutes the Court's findings of fact and conclusions of law.