**LEGAL AID SOCIETY OF NORTHWEST NORTH CAROLINA, INC., Appellant,**

v.

**W. Joseph BURNS, Trustee, Appellee.**

**No. C–87–347–G.**

United States District Court, M.D. North Carolina.

Oct. 20, 1987.

## MEMORANDUM OPINION

EUGENE A. GORDON, Senior District Judge:

In an appeal from the United States Bankruptcy Court for the Middle District of North Carolina, appellant Legal Aid Society of Northwest North Carolina, Inc. ("Legal Aid"), argues that Bankruptcy Judge James B. Wolfe, Jr., incorrectly denied Legal Aid's application for attorney fees. Legal Aid seeks attorney's fees, under 11 U.S.C. § 330, for hours expended on behalf of debtor Robin Leigh Vandiver Brown ("Debtor"). Appellee W. Joseph Burns, trustee of Brown's bankruptcy estate, contends that Legal Aid, by not filing a compensation agreement with the court pursuant to 11 U.S.C. § 329, failed to satisfy the procedural requirements for perfecting an attorney's fees application. After review, the court concludes that attorney's fees are warranted and therefore reverses the decision of the bankruptcy court.

## FACTS

On March 25, 1986, Debtor filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Before filing the bankruptcy petition, Debtor procured the services of Legal Aid. Legal Aid prepared the bankruptcy petition, represented Debtor at a creditors' meeting, and prepared a complaint and order avoiding two nonpurchase money security liens. Legal Aid attached to the bankruptcy petition a "Disclosure of Compensation Paid or Promised to Attorney for the Debtor." The disclosure stated that "no compensation was paid or promised for services rendered or to be rendered in this case."

The bankruptcy court granted Debtor a discharge on July 8, 1986. Legal Aid filed, on January 7, 1987, an application for attorney's fees and reimbursement of costs in the amount of $500.00. In support of its application, Legal Aid submitted an affidavit from Hazel Mack, the Legal Aid attorney who represented the Debtor. In the affidavit, Ms. Mack listed the dates and descriptions of the services rendered and claimed a total of six (6) hours in attorney fees.

The trustee objected to Legal Aid's application, and the bankruptcy court, after a hearing on March 3, 1987, denied the application. The bankruptcy court, noting that only $234.60 remains available for distribution, opined that Legal Aid, in failing to submit a compensation agreement with the bankruptcy court pursuant to 11 U.S.C. § 329, could not be awarded attorney's fees under 11 U.S.C. § 330. The bankruptcy court also expressed doubt whether a nonprofit attorney, under any circumstances, could recover fees for hours expended representing a debtor in a bankruptcy case. Finally, the bankruptcy court added that Legal Aid's application did not sufficiently document and delineate the hours and costs claimed.

Legal Aid gave Notice of Appeal to this court on April 30, 1987, and the court held a hearing on September 29, 1987. On appeal, Legal Aid asks the court to answer the following issues: (1) Is a non-profit attorney representing a debtor in a bank-

ruptcy case disqualified from collecting attorney's fees from the bankruptcy estate by virtue of such attorney's non-profit status; (2) Is compliance with 11 U.S.C. § 329(a), which requires an attorney to file with the bankruptcy court a statement of the compensation the debtor has paid or agreed to pay the attorney, a prerequisite to recovering attorney's fees under 11 U.S.C. § 330; (3) By disclosing to the bankruptcy court that the Debtor had not paid or promised to pay the attorney for any services rendered or to be rendered, did Legal Aid satisfy 11 U.S.C. § 329(a); and (4) Is Legal Aid's fee application sufficiently detailed, as required by Bankruptcy Rule 2016, to enable the court to determine the reasonableness of the requested fee award.

## DISCUSSION

With the exception of the fourth issue, which relates to the sufficiency of the fee application and is factual in nature, the court reviews the issues *de novo*. Essentially, the dispute herein concerns the proper construction of 11 U.S.C. §§ 329, 330, and *de novo* review is proper when statutory construction is at issue. *In re Acequia, Inc.*, 787 F.2d 1352, 1357 (9th Cir. 1986); *Matter of Pacific Far East Line, Inc.*, 713 F.2d 476, 478 (9th Cir.1983).

■ Addressing the first issue, the court determines that a non-profit attorney representing a debtor in a bankruptcy case is entitled to attorney's fees to the same extent as an attorney who charges the debtor a fee for the services rendered. In support of the denial of attorney's fees to Legal Aid, the bankruptcy court opined that awarding attorney's fees to a non-profit attorney representing the debtor would "undermine Legal Aid's relationship with the private bar since it [Legal Aid] would now be in direct competition for profits." There does not, however, appear to be any authority for denying attorney's fees solely on account of an attorney's non-profit status. In fact, counsel for the trustee admitted during oral agument that a non-profit attorney should be treated the same, in terms of fee awards, as private attorney. A review of the decisions outside the bank-

ruptcy area indicates that the courts have unanimously allowed non-profit legal service organizations to collect attorney fees. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Lightfoot v. Walker*, 826 F.2d 516, 524 (7th Cir.1987) (circuit "approved the payment of market rates to nonprofit attorneys"); *Jordan v. City of Greenwood, Miss.*, 808 F.2d 1114, 1117 (5th Cir.1987) ("legal services organizations are entitled to attorneys' fee awards under 42 U.S.C. § 1988 to the same extent as private counsel").

The Supreme Court, in *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), specifically held that, with respect to civil rights cases under 42 U.S.C. § 1988, "reasonable fees ... are to be calculated according to the prevailing market rates ..., regardless of whether plaintiff is represented by private or non-profit counsel." The Supreme Court also quoted with approval a decision from a California case, *Davis v. County of Los Angeles*, 8 EPD § 9444 (CD Cal.1974) [Available on WESTLAW, 1974 WL 180], affirming the right of such non-profit organizations to receive attorney's fees:

> In determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel ... are employed by ... [a] non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorney's fees to be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorney's fees.

465 U.S. at 895, 104 S.Ct. at 1547. With the prevailing stance of treating non-profit attorneys the same as private attorneys, and with nothing to suggest that this stance should be overridden in the bankruptcy context, the court concludes that Legal Aid, in representing a debtor in a bankruptcy case, is entitled to collect attorney's fees to the same extent as a private attorney.

The question remains whether Legal Aid is entitled to a fee award in the instant case. The trustee contends that compli-

ance with 11 U.S.C. § 329(a) is a prerequisite to recovering attorney's fees under 11 U.S.C. § 330, and that Legal Aid did not comply with section 329(a). Section 329(a) provides as follows:

> Any attorney representing a debtor in a case under this title ..., whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of in or connection with the case....

Section 329(a) is supplemented by Bankruptcy Rule 2016(b), which establishes the filing deadline for the section 329(a) disclosure:

> Every attorney of a debtor, whether or not the attorney applies for compensation, shall file with the court on or before the first date set for the meeting of creditors, or at another time as the court may direct, the statement required by § 329.

In determining whether compliance with section 329(a) is a prerequisite to recovering attorney's fees, the court initially notes that Congress did not devise the section 329(a) disclosure to enable the bankruptcy court to assess the reasonableness of an attorney's fee application. Rather, as the legislative history of section 329 elucidates, Congress devised the 329(a) disclosure to protect creditors from the diversion of the debtor's funds to the attorney:

> Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

Notes of Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787. The section 329(a) disclosure, among other things, enables the bankruptcy court to review, in the beginning of the bankruptcy case, the payments made during the year preceeding the bankruptcy petition by the debtor to the attorney and, under 329(b), to order the return of such payments if the payments were excessive. In this way, the bankruptcy court guards against the diversion of the estate's funds, thereby protecting the estate's creditors.

Section 329(a)'s language also indicates that Congress intended the section to protect creditors and not to facilitate the assessment of a fee application. Section 329(a) provides that the attorney shall file the disclosure "whether or not such attorney applies for compensation under this title...." Congress, in drafting this provision, was not focusing on the prospective reasonableness of an unfiled fee application to the bankruptcy court; the disclosure is required regardless of whether an attorney seeks fees from the bankruptcy estate. Rather, Congress, in an effort to protect the estate's creditors, was focusing on the reasonableness of both the debtor's past and prospective payments to the attorney.

Finally, the section 329(a) disclosure, in the context of assessing a fee application, is functionally superfluous, since Bankruptcy Rule 2016(a) specifically delineates the requirements for filing a proper fee application. Rule 2016(a), entitled "Application for Compensation or Reimbursement", requires the applicant to file a "detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." In addition, Rule 2016(a) specifically requires the applicant to state "what payments have theretofore been made or promised to the applicant...." Rule 2016(a) thus fully enables the bankruptcy court to assess the reasonableness of a fee application, and accordingly, section 329(a) has no functionally application in the fee application context.

In sum, based on its legislative history and language, section 329(a) requires an attorney representing a debtor to file a compensation disclosure, at the beginning of the bankruptcy case, for the purpose of protecting creditors, and Rule 2016(a) requires a similar disclosure, at the time when the attorney applies for fees, so that the bankruptcy court can assess the reasonableness of the requested fee award.

Although compliance with section 329(a) does not facilitate the assessment of a section 330 attorney's fee application, a plausible argument can be constructed that compliance with section 329(a) should nevertheless be a prerequisite to recovering attorney's fees under section 330. That is, Congress may have intended to condition a subsequent award of attorney's fees on compliance with section 329(a), thereby assuring compliance with section 329(a) and achieving the goal of creditor protection. After all, section 330, by its terms, is "subject to" section 329. Thus, while not formally holding that compliance with section 329(a) is a prerequisite to collecting attorney's fees, the court notes the plausibility of the "prerequisite" position and, accordingly, will address whether Legal Aid in fact satified the section 329(a).

■ Council for the trustee contends that Legal Aid did not comply with section 329(a) because Legal Aid did not disclose a compensation agreement to the bankruptcy court. In effect, council argues that compliance with section 329(a) requires not only the complete disclosure of the financial arrangement between the debtor and the attorney, but also the very existence of a payment agreement between the debtor and the attorney.[1]

■ The court, however, has determined that based on the language and purpose of section 329(a), the section is, at its core, a disclosure provision designed to protect the bankruptcy creditors. Section 329(a) is not a substantive provision mandating the existence of a compensation agreement between the debtor and attorney. If compliance with section 329(a) is a prerequisite to recovery under section 330, it is to assure compliance with section 329(a) and thereby protect the creditors, not to facilitate the assessment of a fee application or to require the existence of a compensation agreement. In this light, a debtor's attor-

ney complies with section 329(a) by furnishing the bankruptcy court with sufficient information to enable the court to discern whether the debtor, through excessive past or prospective payments to the attorney, has diverted or intends to divert funds from the bankruptcy estate. Undoubtedly, an attorney complies with section 329(a) by disclosing, as Legal Aid did, that "no compensation was paid or promised for services rendered or to be rendered in this case." No statement could, to a greater extent, allay fears that the debtor excessively paid or plans to pay the attorney.

■ In addition, to construe section 329(a) as requiring a fee agreement between the debtor and the attorney would preclude Legal Aid, which cannot charge a fee for its services, from ever recovering fees for hours expended in representation of a debtor. As such, private attorneys representing debtors would receive fee awards while non-profit attorneys would be denied the same advantage. Council for the trustee admitted, and the court has already concluded, that non-profit attorneys should be entitled to attorneys fees to the same extent as private attorneys. For these reasons, the court rejects the argument that section 329(a) actually requires, as a condition to recovering fees under section 330, the existence of an payment agreement in which the debtor promises to pay the attorney a certain amount of money. The court, accordingly, concludes that Legal Aid complied with section 329(a) by fully disclosing that no compensation was paid by or expected from the Debtor.

■ The last issue presented in this case is the sufficiency of the Legal Aid's fee application. Rule 2016, as delineated above, prescribes the requirements for a proper fee application. Legal Aid's application appears inadequate in regard to substantiating its request for a reimbursement

---

1. In the alternative, council for the trustee argues that Legal Aid need not disclose the existence of a fee agreement provided that Legal Aid discloses, in the section 329(a) filing, its intention to apply to the bankruptcy court for attorney's fees. The court encourages Legal Aid, in an effort to facilitate the efficient administra-

tion of the bankruptcy estate, to make such a disclosure. Nothing in the language or legislative history of section 329, however, remotely suggests that such a disclosure is a prerequisite to recovering fees under section 330. As such, the court will not require Legal Aid to disclose its intention to seek attorney's fees.

of expenses. On the other hand, Legal Aid's application adequately documents its request for six (6) hours in attorney fees. The affidavit accompanying the application lists the dates of the services rendered, the time expended on each date, and a description of the services rendered. While Legal Aid claimed $500.00, only $234.60 remains in the estate. Legal Aid, in its brief, intimated that an award of the funds remaining in the estate would suffice. Realizing that Legal Aid will only be compensated at a rate of $39.10 for the six (6) hours it worked, the court will not remand this case for a determination of the reasonableness of such an award. Rather, the court holds that Legal Aid is entitled to the $234.60.

## CONCLUSION

Legal Aid, as a non-profit legal service organization, is entitled to collect attorney's fees for hours expended on behalf of the Debtor to the same extent that similarly-situated private attorney could collect. Legal Aid complied with section 329(a), and Legal Aid's fee application is sufficiently detailed so as to enable the court to determine that an award of the remaining $234.60 in the estate would not be excessive. The court, accordingly, reverses the bankruptcy court's denial of fees to Legal Aid and orders that the remaining $234.60 hereby be awarded to Legal Aid.