**In re Mike and Patricia OSTAS, Debtors.**

**Kenneth H. COHN, Appellant,**

v.

**U.S. TRUSTEE, Appellee.**

No. 92–CV–1236.

United States District Court, N.D. New York.

Sept. 2, 1993.

Brown & Brown, Ballston Spa, NY (Thomas W. Peterson, of counsel), for appellant.

Arthur J. Gonzalez, Acting U.S. Trustee, Albany, NY (Kevin Purcell, of counsel), for appellee.

Holmberg Galbraith Orkin & Bennett, Ithaca, NY (Dirk A. Galbraith, of counsel), for debtors.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### Background [1]

This bankruptcy appeal arises out of an order by Bankruptcy Judge Mahoney, dated August 27, 1992, requiring the appellant, Kenneth Cohn, to pay $2,000 to the debtors, Mike and Patricia Ostas, as a sanction pursuant to Bankruptcy Rule 9011. That order further required attorney Cohn to pay another $2,000 to the debtors [2] as a

1. The Bankruptcy Court Clerk's Office did not, as is its usual practice, number the record in this appeal. Therefore, for the sake of convenience, the court has taken the liberty of consecutively numbering the record.

2. Although the order states that the "debtors" are entitled to $2,000 as a sanction and to a $2,000 refund, the order goes on to state that a total of $4,000.00 is payable to Patricia Ostas only. Record at 60–61 (copy of Aug. 27, 1992 Order).

refund for excessive fees pursuant to 11 U.S.C. § 329.

The sanctions and return of fees order are based upon the following events. In early 1989, attorney Cohn filed a Chapter 13 petition for bankruptcy protection on behalf of the Ostas, and he charged them $750 for those legal services. Record at 1, ¶ 3. That Chapter 13 case was eventually dismissed in December, 1990, upon motion of the Trustee, because of delay prejudicial to the creditors in that the debtors failed to make the required payments under the plan. *Id.* at 10, ¶ 2. The Ostas decided to file a second Chapter 13 petition, again employing Mr. Cohn to represent them. *Id.*, ¶ 3. Mr. Cohn also charged them $750 for those legal services. *See id.* at 5, ¶ 27. In October, 1991, the second Chapter 13 case was dismissed without prejudice also on the Trustee's motion.[3] *Id.* at 1, ¶ 4. The basis for that dismissal again was delay prejudicial to the creditors. *Id.* Mrs. Ostas claims that she never received notice of this second dismissal. *Id.* at 19, ¶ 12. And appellant Cohn makes the same claim. *Id.* at 24, ¶ 17.

In the early spring of 1992, Mrs. Ostas was notified that she had three days in which to vacate her residence because it had been sold at a foreclosure sale after the dismissal of the second Chapter 13 petition. *Id.* at 11, ¶ 4. After learning this, Mrs. Ostas immediately contacted Mr. Cohn who supposedly advised her that she could not be evicted because the Chapter 13 was still in effect. *Id.* at 2, ¶ 5(b). Eventually Mr. Cohn allegedly advised Mrs. Ostas that it would cost an additional $2,500 to resolve this matter. *Id.*, ¶ 6. Implicit in that agreement was that the additional fees would include the services of "an attorney to assist us in Albany." *Id.;* and Record at 13. Although it is not clear on the present record for which services these payments were made, what is clear is that the debt-

ors paid Mr. Cohn the following amounts on the following dates: $1,000 on April 22, 1992, $900 on April 28, 1992, and $600 on May 8, 1992, for a total of $2,500. *Id.*, ¶ 7 and Record at 14 (copies of payment receipts). Eventually Mr. Cohn was successful in obtaining a stay in state court of the foreclosure proceeding. *Id.* at 32, ¶¶ 3 and 5.

Upon the advice of appellant Cohn, Mrs. Ostas signed an affidavit prepared by him requesting that the Bankruptcy Court vacate its prior order of dismissal and reinstate the debtors' second Chapter 13 case. *Id.* at 2, ¶ 5(f); Record at 11, ¶ 8; and Record at 15–21. According to Mrs. Ostas, in addition to the already agreed upon fee, Mr. Cohn then advised her that there would be an **additional** $1,000 fee required as part of that motion. *Id.* at 11, ¶ 9 (emphasis added). The debtors did not pay that additional $1,000 though because they thought that the money they had paid to date ($2,500) included Mr. Cohn's representation of them at the return date of the motion. *Id.* at 2, ¶ 5(g). Although Mr. Cohn concedes that he did request an additional fee to retain a lawyer to argue the motion, he now claims that the subsequent filing of the Rule 2016 Amended Statement, which will be more fully explained herein, as well as his attendance at a subsequent meeting relative to these matters, demonstrates that he continued to represent the Ostas even without the requested additional payment.

The motion to vacate was scheduled to be heard on May 27, 1992. Mr. Cohn averred that he agreed to an adjournment, however, because the attorney for the mortgagees could not be present on that date. *Id.* at 32–33, ¶ 6. The agreed upon adjournment date was June 15, 1992. Mr. Cohn could not appear then, however, so he supposedly asked attorney James Straney to appear for him. *Id.* at 33, ¶ 7. Mrs. Ostas

---

**3.** The Trustee's Notice of Motion conflicts as to the date the debtors' second Chapter 13 case was dismissed. In one paragraph the dismissal date ·is given as October, 1992, and in another it is given as October, 1991. *Compare* Trustee Motion at 1, ¶ 4 *with* Trustee Motion at 2, ¶ 5(a). Given the procedural history of this case as fully documented in the record, the court assumes that the October, 1991 date is the true date of dismissal of the second Chapter 13 case, and that is consistent with the averment of Mrs. Ostas that the "present [bankruptcy] case" was dismissed on October 3, 1991. Record at 11, ¶ 4.

appeared at that June 15, 1992 hearing with **no** attorney to represent her, however. *Id.* at 2, ¶ 5(h); Record at 11, ¶ 12 (emphasis added). Mrs. Ostas explains that she came to court on June 15, 1992 because after Mr. Cohn advised her that he assumed that the May 27, 1992 hearing was "off," she called the bankruptcy court herself and was advised that the hearing had been adjourned to June 15, 1992. *Id.* at 11, ¶ 11. Although no lawyer appeared to represent Mrs. Ostas on that date, three other lawyers in the case did appear: James Collins, Ronald J. Fitzgerald, and Robert Littlefield, Jr., the Chapter 13 Trustee. *Id.* at 30, ¶ 5. Some mention was made on June 15, 1992 that the appellant had called another attorney to appear on behalf of the debtors, but that attorney did not appear either. *Id.* As Mrs. Ostas candidly describes it, when no attorney appeared to represent her, she "felt like a fool." *Id.* at 27. The hearing thus was adjourned again and rescheduled for August 18, 1992. *Id.* at 2, ¶ 5(h).

As required by Bankruptcy Rule 2016(b),[4] which complements 11 U.S.C. § 329,[5] Mr. Cohn signed and filed an Amended Statement thereunder.[6] Basically those provisions require that a debtor's attorney seeking compensation from a bankrupt estate must file an application for the same detailing the services rendered and the terms of payment. The Amended Statement, which is part of this record on appeal, indicates that prior to the filing thereof, the debtors paid Mr. Cohn $900 for legal services rendered. *Id.* at 28. No other payments by debtors to appellant Cohn are reflected therein. *See id.* That statement further indicates that those services were rendered in connection with the "preparation of Motion papers and research to re-open Chapter 13 petition" and for "**appearance** in Bankruptcy Court for Motion." *Id.* (emphasis added). That Statement is dated June 29, 1992, **after** the June 15, 1992 hearing, which although the reasons why are disputed, there is no dispute that appellant did not attend. On August 25, 1992, three motions were heard before Bankruptcy Judge Mahoney. The first motion was for substitution of counsel by the debtors, and that motion was granted. *Id.* at 37. The second motion was to vacate the prior dismissal order of the second Chapter 13 case.[7] The third motion is the subject of this appeal, and that was a motion by the United States Trustee,

---

**4.** That Rule states, in relevant part:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

11 U.S.C. Rule 2016(b) (West Supp.1993).

**5.** That statute reads as follows:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
> (1) the estate, if the property transferred—
> (A) would have been property of the estate; or
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> (2) the entity that made such payment.

11 U.S.C. § 329 (West 1993).

**6.** The original Rule 2016 Statement was dated May 18, 1991, and filed by Mr. Cohn with the original bankruptcy petition and schedules. Record at 2, ¶ 6. The Amended Statement was filed on July 1, 1992. *Id.* at 3; and Record at 28 (copy of this statement).

**7.** With the consent of Mrs. Ostas, following oral argument, an agreement was also apparently signed which required the debtors to bring their payments under the plan (which were in arrears) up to date. Record at 39. Judge Mahoney approved that agreement on the record. *Id.* at 40.

wherein he sought several different forms of relief, including requesting attorney Cohn to refund to the debtors $2,500 plus interest, for failing to appear at the June 15, 1992 hearing; seeking the imposition of a $2,500 sanction against Mr. Cohn pursuant to Bankruptcy Rule 9011 for Mr. Cohn's alleged failure to file an accurate statement under Bankruptcy Rule 2106; and seeking a refund from Mr. Cohn to the debtors of an additional $870.00 for the two Chapter 13 petitions which he filed on their behalf.[8] *Id.* at 6.

In connection with these motions, on August 6, 1992, Judge Mahoney signed an order requiring, in no uncertain terms, Mr. Cohn to appear at the Trustee's motion on August 25, 1992. In that order, entitled "Order Directing Debtors' Former Attorney to Attend Hearing and Supply Records," Judge Mahoney made an express finding "of the necessity for the appearance of Kennth [sic] H. Cohn, Esq., the debtor's [sic] former attorney, . . . ." *Id.* at 29. He further ordered appellant Cohn to "attend" the August 25, 1992 hearing. *Id.* By that order, appellant Cohn was also required to "produce his entire case files for the debtors' two cases . . ., and produce all his accounting materials, books and records relating to the services rendered by [him] in both cases." *Id.* The order further advised that appellant Cohn should attend that hearing to respond "to why an order should not be entered pursuant to 11 U.S.C. 329 and Bankruptcy Rule 9011 to examine fees, to return excessive fees and for sanctions, . . . ." *Id.* Mr. Cohn did not appear, although Mr. Straney, his lawyer at the time, did. *Id.* at 41 and 55. On this appeal it is Mr. Cohn's position that he was instructed by· attorney Straney that he [Cohn] could appear through Straney; in other words, that Cohn did not have to be present himself at the motion. In any event, at that motion the Trustee vehemently argued that Mr. Cohn should be

sanctioned and required to refund certain fees to the Ostas for, among other reasons, his failure to disclose the full $2,500 which he had received from the debtors, as well as his failure to appear or to arrange substitute counsel to appear at the June 15, 1992 hearing.

Midway through the Trustee's argument, Bankruptcy Judge Mahoney interrupted, swore Mrs. Ostas in as a witness, and asked her to give, "in narrative form," her experiences with Mr. Cohn and that she did. *Id.* at 48–51. Mrs. Ostas testified that she first paid appellant Cohn $500 for the filing of the first Chapter 13 petition. *Id.* at 48. She further testified that she was never advised by him that that particular case had been dismissed. *Id.* at 49–50. Mrs. Ostas went on to state that she paid Cohn another $270 for the second Chapter 13 filing. *Id.* at 49. Finally, she testified that she paid Cohn yet another $2,500, but that he did "nothing" for her after all of this. *Id.* at 50–51.

After hearing the arguments in favor of and in opposition to the Trustee's motion for sanctions and the return of fees and considering the papers submitted therewith, and after hearing Mrs. Ostas' testimony, Judge Mahoney granted the Trustee's motion and ordered Mr. Cohn to pay $4,000 to Mrs. Ostas. *Id.* at 56. As mentioned earlier, the order itself divided that payment into two parts: $2,000 for sanctions under Rule 9011 [9] and another $2,000 as a refund for excessive fees pursuant to 11 U.S.C. § 329.[10] *Id.* at 60. That order further directed Mr. Cohn to make those payments "no later than thirty days from the date of . . . entry. . . ." *Id.* Finally, the order concluded by stating "[t]hat in the event that Kenneth H. Cohn, Esq. fails to comply with the Court's order as stated above, other and further sanctions may be awarded." *Id.* at 61.

Mr. Cohn did not make the $4,000 payment within the specified time frame. Mr.

---

**8.** The Trustee sought several other forms of relief on that motion, but they are not germane to this appeal.

**9.** Unless otherwise indicated, all references to rules herein are to the Bankruptcy Rules.

**10.** At oral argument, Judge Mahoney specifically told the Trustee, "A combination [of $4,000 for fees and sanctions], I don't care how you put it, . . . ." Record at 56.

Cohn now claims that the reason he did not is because he had directed attorney Straney to obtain a stay of the sanction order and to apply for reconsideration, and he thought that those actions had been taken. The United States Attorney then brought a contempt motion against Mr. Cohn, which resulted in an order "assessing $1,000 in legal fees against Mr. Cohn[;]" and that $1,000 award has since been paid.[11] Appellant's Brief at 7.

On September 8, 1992, Cohn's attorney at the time, Mr. Straney, filed with this court a Notice of Appeal from the sanction order. Record at 62. Due to Mr. Straney's failure to designate the record on appeal, on September 28, 1992, a Certificate of Non–Compliance was filed by the Bankruptcy Court Clerk. Eventually, Mr. Cohn's present attorney, Thomas Peterson, was substituted as counsel for Mr. Cohn and the necessary papers filed to perfect this appeal.

## DISCUSSION

### I. Standard of Review

The standard of review for a bankruptcy appeal is governed by Bankruptcy Rule 8013 and the case law construing it. That Rule provides, *inter alia,* that "[f]indings of fact, ..., shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." 11 U.S.C. Bankr.Rule 8013 (West Supp.1993); *see also Brody v. Brody,* 3 F.3d 35, 38 (2d Cir.1993) (same). Clearly erroneous is not defined in Rule 8013. The Supreme Court has explained however that, " '[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992) (quoting *United States v. United States Gypsum Co.,* 333 U.S.

364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); and citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)). In *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544 (2d Cir.1991), the Second Circuit further explained:

> An appellate court may not, ..., reverse a trial court's factual findings simply because the appellate court would have weighed the evidence differently in the first instance.... This deferential standard of review 'rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence.'

*Id.* at 1550 (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982)) (other citations omitted).[12] This clearly erroneous standard applies even when, as here, the Bankruptcy Court does not elucidate its factual findings as such, but its opinion nonetheless was based upon explicit determinations. *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1312 n. 3 (8th Cir.1987) (citing *In re Clarkson,* 767 F.2d 417, 419 (8th Cir.1985)). The clearly erroneous standard applies equally to factual findings "regardless of whether the bankruptcy court's findings rest on the testimony of witnesses at a hearing ..., or on documentary evidence submitted in connection with the application." *Truck Drivers Local 807 v. Carey Transp., Inc.,* 816 F.2d 82, 88 (2d Cir.1987) (citation omitted).

On appeal a bankruptcy court's legal conclusions are, however, subject to *de novo* review by the reviewing court. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992) (citation omitted); *see also In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied sub nom., Air Line Pilots Ass'n, Int'l v. Shugrue,* —— U.S. ——, 112 S.Ct. 50, 116

---

**11.** It is not clear from the record or the appellate briefs whether this amount was paid to Mrs. Ostas, but presumably it was.

**12.** Admittedly, the cases discussed above did not involve interpretation of the clearly erroneous standard set forth in Rule 8013. They are nevertheless instructive here because they did discuss the clearly erroneous standard under Fed. R.Civ.P. 52(a), and the pertinent language in that Rule is identical to the clearly erroneous standard set forth in Rule 8013.

L.Ed.2d 28 (1991). The standard of review differs slightly, however, when sanctions are imposed pursuant to Rule 9011. The imposition of sanctions under that Rule is reviewable under the abuse of discretion standard. *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir.1991) (citing, *inter alia, Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). However, ' "legal errors on the part of the [lower courts] will constitute an abuse of discretion.' " *Id.* (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991)). It is against this legal backdrop that the court has considered this appeal from Bankruptcy Judge Mahoney's order of August 27, 1992.

## II. Scope of Appeal

Appellant Cohn pursues a number of arguments on this appeal. The first two arguments are in his view jurisdictional in nature. First appellant Cohn contends that the bankruptcy court was without jurisdiction to sanction him under Rule 9011 because a Rule 2016 Statement does not fall with the scope of Rule 9011. Second, Cohn contends that the bankruptcy court lacked jurisdiction to sanction him because the debtors "are not within the class of persons contemplated by Rule 9011." Appellant's Brief at 9. The Trustee, the appellee herein, responds that the jurisdictional arguments raised by Mr. Cohn are not properly before this court because they were not raised prior to the appeal. The Trustee then goes on to argue that, in any event, those arguments are not jurisdictional in nature, but rather go to the issue of whether the bankruptcy court erroneously exercised its power to sanction under Rule 9011.

■ Regardless of whether the appellant's arguments are jurisdictional or not, it is clear that, contrary to what the Trustee asserts, "[a] district court sitting in a bankruptcy appeal has the power to consider *any* issue presented by the record on appeal, even if the issue was not presented to the bankruptcy court." *In re Hilsen*, 119

B.R. 435, 439 (Bankr.S.D.N.Y.1990) (emphasis added) (and cases cited therein); *see also In re Firstcent Shopping Center, Inc.*, 141 B.R. 546, 551 n. 8 (S.D.N.Y.1992) (citation omitted) ("Even though the Debtors did not explicitly present this argument to the Court, the argument is presented by the record on appeal. I will, therefore, consider it on appeal.") Therefore, in the present case, because the issue of whether the bankruptcy court erred, on whatever basis, in imposing sanctions under Rule 9011 clearly is presented by the record on this appeal, the court will consider these so-called "jurisdictional" issues, as well as the other issues raised by the appellant.

## III. Applicability of Rule 9011

■ With respect to the Rule 9011 sanctions, as just mentioned, the first issue is whether a statement, as required by Rule 2016 and section 329 of the Bankruptcy Code, comes within the ambit of Rule 9011. Because this is strictly an issue of statutory interpretation, it is subject to *de novo* review by this court. *In re Colonial Realty Co.*, 980 F.2d 125, 130 (2d Cir.1992) (and cases cited therein); *see also In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 94 (S.D.N.Y.1992) (bankruptcy court's finding that certain statute applied was a conclusion of law because it involved statutory interpretation, and thus was subject to *de novo* review). Rule 9011 is the counterpart to Fed.R.Civ.P. 11 and it provides, in relevant part:

> Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by a attorney, *except* a list, schedule or *statement*, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by

existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... *If a document is signed in violation of this rule, the court* on motion or on its own initiative, *shall impose on the person who signed it,* the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

11 U.S.C. Bankr.Rule 9011 (West Supp. 1993) (emphasis added).

With absolutely no analysis, appellant Cohn asserts that the Rule 2016 Amended Statement dated June 29, 1992, does not fall within the purview of Rule 9011. Even a cursory reading of the rule demonstrates, however, that he is wrong. All of the items listed in the statutory exception are items filed with the original bankruptcy petition in accordance with Rule 1007. That Rule, entitled "Lists, Schedules and Statements; Time Limits," details those documents required to be filed in conjunction with either an involuntary or a voluntary bankruptcy case. Significantly, documents required to be filed under that Rule require the debtor's signature, and not the signature of the debtor's attorney. Therefore the exclusion of these documents from Rule 9011, which requires the attorney's signature, is consistent with the requirements of Rule 1007.

Furthermore, if it is not clear enough from the language of Rule 9011 itself that only those items required to be filed under Rule 1007 are exempt from its provisions, the Advisory Committee Notes to Rule 9011 make it abundantly clear. Those notes plainly state, "[a]s used in subdivision (a) of this rule, "statement" is limited to the statement of financial affairs and the statement of intention required to be filed under Rule 1007." 11 U.S.C.

Bankr.R. 9011, Advisory Committee Notes to 1991 Amendment (West Supp.1993). Thus, a statement under Rule 2016 plainly does not fall within the limited exception to Rule 9011, and so appellant's argument to the contrary fails.

■ Appellant's next argument is that the bankruptcy court erred in sanctioning him under Rule 9011 because the debtors are not entitled to protection under that Rule. This argument too calls into question a legal conclusion by the bankruptcy court—the applicability of Rule 9011 to the circumstances of this case, and thus is also subject to *de novo* review by this court. *See Colonial Realty,* 980 F.2d at 130; and *Drexel,* 146 B.R. at 94. In particular, appellant asserts that the underlying purpose of Rule 9011 is not to protect debtors, such as Mr. and Mrs. Ostas, but rather, "to protect creditors and others *who rely to their financial detriment upon such filings* on behalf of the debtor which are not well grounded in fact or law." Appellant's Brief at 9 (emphasis in original). The appellant further contends that Rule 9011 only applies to opposing parties, and since the debtors were not opposing parties on the motion for sanctions and the return of fees, that Rule is inapplicable.

The Trustee responds that the purpose of Rule 9011 is twofold. First, to compensate those who suffer as a result of the filing of false documents; and second, "to create a means of insuring that true documents are filed in the first instance." Appellee's Brief at 18. It is this second asserted purpose which the Trustee claims is at stake here, and thus renders Rule 9011 applicable.

■ Neither the parties nor the court were able to locate any case law where sanctions were awarded under Rule 9011 in a situation precisely such as this. That does not mean, however, that the bankruptcy court necessarily erred in invoking Rule 9011. First of all, as set forth above, "appropriate sanction[s]" are mandated under that Rule where a document is signed ·in violation thereof. 11 U.S.C. Bankr.R. 9011 (West Supp.1993). Thus, assuming for the

moment that the Rule 2016 Amended Statement did not comport with Rule 9011, then the bankruptcy court had no choice but to sanction Mr. Cohn thereunder. *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991) (citing, *inter alia*, Fed.R.Civ.P. 11 (sanctions "shall" be imposed)) ("If Rule 11 has been violated, sanctions are mandatory.").[13] Second, if an attorney could not be sanctioned for filing a false or misleading Rule 2016 Statement, it would clearly undermine the intended broad deterrent effect of Rule 9011. Therefore, the court gives no credence to appellant's assertion that the bankruptcy court improperly relied upon Rule 9011 because it is designed to protect only creditors who rely to their financial detriment on filings such as the Rule 2016 Statement. Indeed, if that were truly the intended purpose of Rule 9011, then the Rule 9011 exception for documents required to be filed under Rule 1007, which are the sorts of documents upon which creditors typically rely, would be illogical.

## IV. Propriety of Sanctions

■ Turning finally to the merits of this appeal, the appellant first contends that sanctions were not proper because the Rule 2016 Amended Statement was well grounded in fact. More specifically, he asserts that that Statement was well grounded in fact because he was not required to disclose the debtors' payment to him of the additional $1,600 because that sum was not paid for services related to the bankruptcy proceeding. The appellant further contends that it is uncontroverted that the June 15, 1992 hearing was adjourned, as well as the following return date; and thus, by implication, he had no obligation to appear on that date or thereafter. Lastly, he asserts that the Statement was well grounded in fact because he did retain other counsel to appear for the Ostas at the hearing to reinstate the second Chapter 13 petition, but that he could not have fore-

seen that the Ostas would retain different counsel altogether between the time the motion was filed and when it was eventually argued.

It is the Trustee's position, however, that because appellant Cohn received a total of $2,500 from the debtors, but only reported $900 on the Statement, the bankruptcy court properly sanctioned him under Rule 9011. As further support for the proposition that the appellant was properly sanctioned, the Trustee also points to the fact that Mr. Cohn charged the debtors for representation at the June 15, 1992 hearing, but that it is uncontroverted in the record that he did not even attend that hearing or make arrangements for substitute counsel to appear. Finally, the Trustee notes that sanctions were warranted because the Rule 2016 Amended Statement was not timely filed.

Preliminarily it should be noted that although neither party addressed it, whether the $1,600 payment was "in contemplation of or in connection with" the debtors' bankruptcy proceeding is a matter of statutory interpretation, and as such is subject to *de novo* review. *Legal Aid Soc. of Northwest N.C., Inc. v. Burns*, 80 B.R. 764, 766 (M.D.N.C.1987) (proper construction of, *inter alia*, 11 U.S.C. § 329 reviewable under a *de novo* standard); *see also Colonial Realty*, 980 F.2d at 130; and *Drexel*, 146 B.R. at 94. At this point the sole issue is whether the bankruptcy court abused its discretion in sanctioning appellant Cohn under Rule 9011 for his filing of an allegedly false or misleading Rule 2016 Statement. If that Statement was not well grounded in fact, then, as previously mentioned, plainly the bankruptcy court had no choice but to sanction the appellant under Rule 9011, and thus that court cannot be found to have abused its discretion. *See International Broth. of Teamsters*, 948 F.2d at 1344. As to whether the appellant should have reported the $1,600 he received in payment from the debtors, he believes that he had

---

**13.** Because of the parallels between Fed.R.Civ.P. 11 and Bankruptcy Rule 9011, *Cohoes*, 931 F.2d at 227, Rule 11 jurisprudence is equally instructive in reviewing the imposition of sanctions

under the latter. *Id.* Moreover, as does Fed. R.Civ.P. 11, Rule 9011 also includes the mandatory "shall" language with respect to the imposition of sanctions.

no duty to make such disclosure because those payments were, in his words, "not related" to a pending bankruptcy proceeding. As will be seen, however, that argument flies in the face of relevant case 'law. In making that argument, appellant relies upon *Matter of Hargis*, 895 F.2d 1025 (5th Cir.1990), wherein the Fifth Circuit expressly recognized that section 329 does not apply to those services which are "unrelated" to a bankruptcy proceeding. *Id.* at 1026. The Court did not distinguish though between "related" and "unrelated" services, and the factual background provided therein is sketchy at best, so that case is of little or no assistance to the court here.

In *In re Saturley*, 131 B.R. 509 (Bankr. D.Me.1991), however, a case noted by the Trustee, the court explained the disclosure obligations of a debtor's counsel under 11 U.S.C. § 329 and Rule 2016 as follows: "A debtor's counsel has an affirmative duty punctiliously to disclose **all** its connections with the debtor, including fees paid in the year preceding the bankruptcy filing." *Id.* at 516 (citations omitted) (emphasis in original). Quoting from section 329, the court further explained, "Just as counsel seeking approval of employment must come forward with full, candid and complete disclosures to enable parties-in-interest and the court to assess the propriety of employment, ..., so must debtor's counsel lay bare **all** its dealings, antecedent and anticipated, regarding compensation for work **'in contemplation of or in connection with'** the case." *Id.* at 516–17 (quoting 11 U.S.C. § 329(a)) (other citations omitted) (emphasis added). Then, in quite strong language, the court went on to explain the purpose of such broad and stringent disclosure requirements under that statute:

> Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied..... The court may exercise its discretion to deny or reduce fees for counsel's failure to disclose its fee arrangements **whether or not actual harm** accrues to the estate..... Whatever the explanation for disclosure inadequacies, it reflects poorly on responsible counsel; ...; and the re-

sulting potential for frustration of the Code's policy of thorough scrutiny is unacceptable....

*Id.* at 517 (citations omitted) (emphasis added). As the foregoing demonstrates, the disclosure obligations of a debtor's attorney under section 329 and Rule 2016 are broad indeed.

The court in *In re Rheuban*, 121 B.R. 368 (Bankr.C.D.Cal.1990), *rev'd in part on other grounds*, 124 B.R. 301 (C.D.Cal. 1990), *on remand*, 128 B.R. 551 (Bankr. C.D.Cal.1991), reached a similar conclusion as to the broad disclosure requirements under section 329. After discussing the origins of the phrase "in connection with" contained in section 329, the *Rheuban* court provided a more detailed definition of that phrase when it stated:

> [the court] conclude[s] that the "in connection with" language used in § 329 extends the scope of the Court's review to compensation paid by the debtor to an attorney any time after one year prior to the commencement of the debtor's bankruptcy case, whether or not the court can make a subjective determination that the debtor was contemplating bankruptcy, *if* it can be objectively determined that the services rendered or to be rendered by the attorney **have or will have an impact** on the bankruptcy case.

*Id.* at 378 (first emphasis in original; second emphasis added). In fact, a case by Bankruptcy Judge Gerling of the Northern District of New York is indicative of the broad scope of the phrase "in connection with" for purposes of section 329. In *In re Command Services Corp.*, 85 B.R. 230 (Bankr.N.D.N.Y.1988), Judge Gerling held that the services of a debtor's attorney who was retained to collect accounts receivable were rendered "in connection with" a bankruptcy proceeding where the debtor's failure to collect on those accounts was the precipitating cause of the debtor's eventual bankruptcy. *Id.* at 232.

Certainly the $1,600 compensation appellant Cohn received for legal services rendered by him to obtain the stay of foreclosure was work "in connection" with the

debtors' bankruptcy, as that phrase has been construed by the courts. Given the somewhat tortured history of debtors' bankruptcy proceedings, as detailed earlier, it is difficult to see how the foreclosure work done by appellant Cohn could be considered anything but work done "in connection" with the debtors' bankruptcy proceedings. While it is true that there was no Chapter 13 case pending when the appellant obtained the stay of foreclosure, the foreclosure action clearly was inextricably intertwined with the reopening of the debtors' second Chapter 13 proceeding. Obviously obtaining the stay of foreclosure impacted the debtors' bankruptcy, and even the appellant seems to concede as much in his answering affidavit of August 24, 1992. In that affidavit, he explains that the reason for bringing the foreclosure action was to "allow[ ] the petitioners [the debtors] the right to move the Bankruptcy Court to reopen the dismissed Chapter 13." Record at 32, ¶ 3 (part of record on appeal).

Furthermore, as the Trustee accurately points out, without the stay of foreclosure the anticipated motion to "re-open" the debtors' Chapter 13 petition would have been fruitless. Thus, upon *de novo* review, the court is compelled to conclude, as the Bankruptcy Court did, that the appellant's Rule 2016 Amended Statement was not well grounded in fact because it omitted the $1,600 payment he had received from the debtors for legal services rendered with respect to obtaining a stay of foreclosure. Consequently, the Bankruptcy Court's order is affirmed insofar as it sanctioned the appellant for filing a false or misleading statement under Rule 2016. Affirmance of this aspect of the Bankruptcy Court's order is particularly appropriate here because of the mandatory nature of sanctions under Rule 9011, where the court finds that a violation of such Rule has occurred. *See International Broth. of Teamsters*, 948 F.2d at 1344; *In re Omega Trust*, 110 B.R. 665, 673 (Bankr.S.D.N.Y.), *aff'd in part and remanded in part*, 120 B.R. 265 (S.D.N.Y.1990) (Examining the propriety of sanctions under Rule 9011, the court unequivocally stated, "[o]nce the court finds that Rule 11 has been violated, the court

has no choice but to impose appropriate sanctions.")

Having determined that the appellant was properly sanctioned by the Bankruptcy Court on the grounds that he filed a false or misleading Rule 2106 Statement, the court need not consider at this juncture the appellant's other arguments for reversal with respect to the sanctions.

## V. *Return of Fees as Excessive*

■ The appellant next asserts that the bankruptcy court's finding that the fees paid to him were excessive was clearly erroneous, and thus that aspect of the bankruptcy court's order requiring a return of fees to the debtors also must be reversed. The Trustee responds that that finding was not clearly erroneous.

The thrust of the appellant's argument on this issue is that the bankruptcy court erred in failing to make the necessary factual inquiry as to the reasonableness of the fees charged by the appellant; and thus the bankruptcy court's order must be reversed on the issue of return of attorney's fees. The appellant also mentions that the bankruptcy court improperly gave the Trustee discretion as to the how to apportion the $4,000 between sanctions and fees to be returned. *See* n. 11, *infra*.

The Trustee counters that there is adequate support in the record for the Bankruptcy Court's "findings of fact that all the fees taken in the two cases were excessive." Appellee's Brief at 19. For example, the Trustee notes that the appellant failed to appear at the August 25, 1992 hearing regarding the Trustee's application for sanctions and the return of fees, as ordered—a fact which the appellant does not and cannot dispute. The Trustee further notes that the appellant turned over incomplete files, despite being ordered to turn over "his entire case files for the debtors' two cases specifically, ...[;]" and that he did not produce his accounting records, which the order also required him to do. Record at 29, ¶ (b). Perhaps the most significant factor noted by the Trustee is that because appellant Cohn did not appear

at the August 25, 1992 hearing with the required documents, no evidence was introduced on his behalf to show the value of the services which he rendered in either of the debtors' bankruptcy proceedings. Finally, the Trustee contends that when taken as a whole the record fully supports the bankruptcy court's finding that appellant's fees were excessive based upon the inadequate quality of the services rendered by appellant on behalf of the debtors.

Under section 329, in examining the reasonableness of fees charged by a debtor's attorney, courts have recognized a number of relevant criteria, such as " 'the time, nature, the extent and the value of [the attorney's] services, and the cost of comparable services other than in a case under the [Code.]' " *In Bolton*, 43 B.R. 598, 600 (Bankr.E.D.N.Y.1984) (quoting *In re Swartout*, 20 B.R. 102, 105 (Bankr. S.D.Ohio 1982) (and citing 11 U.S.C. § 330(a)(1)). Courts should also consider, among other things, " 'the necessity of the work performed, the novelty or unusual difficulty presented by a particular legal issue, the attorney's legal experience and the failure or success in accomplishing desired result on the debtor's behalf.' " *Id.* (quoting *Swartout*, 20 B.R. at 105 (citations omitted)); *see also Matter of Grant*, 14 B.R. 567, 569 (Bankr.S.D.N.Y.1981) (citations omitted) ("In reviewing an attorney's fee to determine whether it is reasonable under the circumstances the Court must consider the nature of the services and the competence of the performance ... and it also must be guided by ethical considerations.") Significantly, the burden of proof is on the attorney to show that any compensation he or she has received is reasonable. *Id.* (and cases cited therein).

The difficulty in the present case is that the bankruptcy court did not engage in a comprehensive analysis of the above listed factors. That omission is understandable, however, given the fact that the court was hampered in that regard by appellant's own inaction. Specifically, as just mentioned, the appellant did not provide the court with the documentation which he was specifically directed to do by a prior order of the bankruptcy court. Thus, it was extremely difficult for the bankruptcy court to address specifically some of the relevant factors such as time spent, nature, extent and value of appellant's services. The bankruptcy court did have before it though and was able to consider receipts for payments made by the debtors to appellant Cohn, as well as other documentation provided with respect to the Trustee's motion. Furthermore, the court was able to hear the testimony of one of the debtors, Mrs. Ostas; to ask her questions; and to judge her credibility as to the nature and extent of the legal services provided her by appellant Cohn.

Although more detailed or at least more specific factual findings would have been beneficial to this reviewing court, after examining the entire record, the court is not convinced that the bankruptcy court's finding that appellant Cohn's fees were excessive is clearly erroneous. Therefore, that finding will not be upset on appeal. According to the bankruptcy court, its determination to require the appellant to refund to the debtors certain fees as excessive was based upon several factors, including appellant's prior conduct before that court, his actions with respect to the debtors' second Chapter 13 case which was dismissed, and his receipt of fees for services not performed, such as his failure to appear on June 15, 1992. Under this necessarily deferential standard of review, the court can find no basis for upsetting the bankruptcy court's determination that appellant's fees were excessive. Moreover, given the appellant's failure to comply with the bankruptcy court's August 6, 1992 order, he wholly failed to meet his burden of proof in showing that his fees were reasonable and not excessive. In light of the foregoing, the record hardly supports appellant's view that the bankruptcy court's finding of excessive fees was clearly erroneous. Therefore, this aspect of the bankruptcy court's order is also affirmed.

The appellant makes two other arguments with respect to the finding of excessive fees which cannot be ignored. First he asserts that such finding was also

clearly erroneous because there was no evidence before the bankruptcy court that the appellant could have or should have moved to modify the debtors' Chapter 13 plans. More specifically, the appellant contends that "any argument that Mr. Cohn's services were not performed in a workmanlike manner due to a failure to modify the debtors' Chapter 13 Plan has no grounding in the proof before the Bankruptcy Court." Appellant's Brief at 16. The Trustee did not address this particular assertion.

Here again the difficulty is the lack of specific factual findings by the bankruptcy court. Contrary to what the appellant believes, however, although the Trustee may have intimated during the course of oral argument before the bankruptcy court that the appellant should have modified the debtors' Chapter 13 plan, it does not appear that that was a factor in the bankruptcy court's decision to order a return of fees. Instead, it appears from the record that the bankruptcy court's decision was based upon the other factors set forth above. Therefore, the appellant is not entitled to a reversal on this narrow ground.

The appellant further attempts to avoid the bankruptcy court's finding of excessive fees by claiming that the record does not support a finding that he was not present at the June 15, 1992 hearing. Regardless of the facts and circumstances surrounding the supposed adjournment of that hearing, the fact remains that Mrs. Ostas, one of the debtors herein, averred that after calling the bankruptcy court herself and learning that the hearing was adjourned to June 15, 1992 at 11:00 a.m., she appeared, but no one was there to represent her. Record at 11, ¶¶ 11–12. Mrs. Ostas further averred that she was, understandably, "very upset" by this. *Id.* at ¶ 12. And that affidavit was before the bankruptcy court and part of the record on this appeal. Also before the bankruptcy court was a letter written by Mrs. Ostas further describing her dealings with appellant Cohn, including the fact that he did not appear on June 15, 1992. Thus, as Mrs. Ostas put it, leaving her as "my own defense." *Id.* at 26–27.

After reviewing the entire record, as well as the relevant case law, the court is not left "with the definite and firm conviction that a mistake [was] committed" [14] by the bankruptcy court with respect to its findings as to the excessiveness of that appellant's fees. Thus, the court cannot agree with appellant that those findings were clearly erroneous. There is more than ample support in the record for this finding of excessive fees. Mrs. Ostas was advised by the bankruptcy court of a June 15, 1992 hearing which she attended and no attorney appeared to represent her. Further, there are references in the record to appellant's failure to keep Mrs. Ostas fully apprised of the status of her case, and her understandable frustration and distress caused as a result of the manner in which appellant rendered legal services on the debtors' behalf. Consequently, the court fully agrees with the bankruptcy court's determination that under the circumstances presented herein, appellant's fees were excessive.

Moreover, this determination is consistent with the view of several other courts which have found fees to be excessive in similar circumstances. For example, in *In re Wright*, 48 B.R. 172 (Bankr.E.D.N.C. 1985), the court ordered the return of fees as excessive under section 329 where counsel failed to properly represent the debtors resulting in extra court appearances for both of them. *Id.* at 174. In fact, the court held that the debtors' attorney was not entitled to **any** compensation in that case. In so holding the court, in rather picturesque language, recognized that "the obvious anxiety and frustration experienced by [the debtors] in their appearances before this court were compounded by the fact that they were left adrift to navigate the treacherous waters of bankruptcy without rudder or keel." *Id.* Finally, the court concluded by succinctly stating, in words which could have been written with the present case in mind, that "[d]ebtors have the right when they retain an attorney to represent them to receive the guidance,

14. *Mitchell,* 966 F.2d at 98.

counsel, and support for which they pay."
*Id.*

In another case with striking similarities to the present one, upon review of a fee arrangement under section 329, the court found that if a debtor's counsel is not going to appear with the debtor to respond in an adversary proceeding, that counsel has an obligation to advise the debtor of that "important fact" and to advise the attorney that another attorney will be there instead. *Matter of Wilson*, 11 B.R. 986, 991 (Bankr. S.D.N.Y.1981). There the court reasoned that "the debtor may not be willing to agree that her attorney who was paid to represent her, should be permitted to delegate this responsibility to an unknown and untested standby." *Id.* So too, in the present case, if appellant Cohn did not plan on appearing on June 15, 1992 and instead planned on having Mr. Straney appear for Mrs. Ostas that should have been clearly communicated to her; and, as it turns out, to Mr. Straney.[15] Likewise, what is painfully clear from the record before the court is that, as in *Wright*, in several respects these debtors did not receive the guidance, counsel and support for which they paid. Accordingly, the court finds no merit in appellant's argument that the bankruptcy court's finding of an excessive fee was clearly erroneous; and thus that part of the August 27, 1992 order also will be allowed to stand.[16]

## VI. Due Process

Appellant also argues, albeit in a most cursory fashion, that his due process rights were violated because the order requiring the return of fees and sanctioning him was based upon some "unspecified past conduct," which was not mentioned in the Trustee's motion papers. Appellant's Brief at 17. While it does appear that perhaps one factor in the bankruptcy court's finding of excessive fees was his past conduct, that certainly was not the only factor. Record at 55. Furthermore, the appellant has pointed to no case authority and the court is aware of none finding a due process violation where a court failed to specify, in advance of a motion for sanctions or the return of excessive fees, all of the possible grounds for sanctions which it might consider. Appellant was unequivocally advised of the possibility that sanctions and/or the return of fees could be awarded in this case,[17] yet he did not appear on the court ordered date; nor did he produce all the documents which the court also unequivocally ordered him to produce. Appellant's opportunity for a hearing was August 25, 1992 and he received notice of the same in the form of a specific court order mandating, among other things, that he come to court on that date. For whatever reason, he did not. Thus, assuming *arguendo* that appellant's due process rights were somehow violated (which in the court's view appears highly unlikely from the present record), appellant has no one to blame but himself. Thus, appellant cannot avoid the bankruptcy court's sanctions and return of excessive fees on the basis of some claimed due process violation.

15. Without passing in any way on Mr. Straney's conduct before the bankruptcy court, this court observes that insofar as appellant Cohn believes any of the deficiencies in the representation of the Ostas or himself are attributable to Mr. Straney, plainly that is a matter between appellant and Mr. Straney. These financially distressed debtors should not be made scapegoats for any dispute between the appellant and Mr. Straney.

16. Both at oral argument and in his brief, appellant made much of the fact that he ultimately achieved successful results on behalf of the debtors, such as obtaining the stay of foreclosure. Even if that is so, and it appears to be, the Second Circuit has recognized that the fact that economic benefits were eventually bestowed on the creditors cannot serve to excuse an attorney's impermissible fee sharing agreement under the bankruptcy rules. *See Futuronics Corp. v. Arutt, Nachamie & Benjamin*, 655 F.2d 463, 468–71 (2d Cir.1981), *cert. denied sub. nom*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). Thus, in light of that pronouncement, it seems highly unlikely that the fact that appellant may have had some success insofar as his representation of the debtors is concerned, that fact would not excuse his failure to keep Mrs. Ostas fully apprised of the status of her case; his failure to appear on June 15, 1992; and his failure to insure that substitute counsel, Mr. Straney, would appear on that date.

17. Record at 29.

## VII. August 6, 1992 Order

 Lastly, appellant attempts to avoid the sanction award and return of fees by asserting that insofar as those determinations were based upon his failure to attend the August 25, 1992 hearing, such finding constitutes "reversible error." Appellant's Brief at 19. First of all, as already discussed, reversible error is not the governing standard. *See infra* at 316–17. Second and more important is the fact that assuming the bankruptcy court's decision to sanction appellant and require him to return fees to the debtors was based upon his failure to appear on August 25, 1992, such finding is not clearly erroneous. It is undisputed that appellant did not appear at all on that date. *See generally* Record at 35–37. Appellant's assertion that the August 6, 1992 order required only his attendance at that hearing and he did so through his attorney at the time, Mr. Straney, is not persuasive. That order contained a specific finding that appellant's "appearance" on that date was necessary and yet he did not so appear. *Id.* So, insofar as the bankruptcy court based its decision to sanction appellant and require him to return certain fees as excessive on his failure to appear on August 25, 1992, the court does not consider that finding to be clearly erroneous.

To summarize, there is no merit to any of the grounds urged by appellant for reversal. With respect to the bankruptcy court's factual findings of which appellant complains, as discussed herein, after reviewing the complete record, the court is not left "with the definite and firm conviction that a mistake [was] committed" [18] by the bankruptcy court here. The appellant therefore has failed to convince this court that any of the bankruptcy court's challenged factual findings were clearly erroneous. Furthermore, as also discussed herein, the bankruptcy court's legal conclusion challenged by appellant on this appeal is able to withstand this court's *de novo* review. Accordingly, the bankruptcy court's order of August 27, 1992 is affirmed in all respects.

IT IS SO ORDERED.

---

18. *Mitchell,* 966 F.2d at 98.